THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CUTCHLOW FISHER CAHILL, Defendant-Appellant.

Second District (2nd Division)    No. 75-233

Opinion filed April 13, 1976.

Ralph Ruebner and Joshua Sachs, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Edward N. Morris, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

After a bench trial, defendant was convicted of both the unlawful use of weapons (Ill. Rev. Stat. 1973, ch. 38, §24—1), and of failure to have in his possession a Firearm Owner's Identification Card (Ill. Rev. Stat. 1973, ch. 38, §§83—2, 83—14). He was fined $100 plus $10 costs on the first charge and $10 and $10 costs on the second. We review the facts preserved in a bystander's report certified by the trial judge in accordance with Supreme Court Rule 323(c). Ill. Rev. Stat. 1973, ch. 110A, §323(c).

According to the testimony of Aurora patrolman Lucas, he and his partner, Officer Wennmacher, received a call on their squadrol radio at approximately 9 p.m., on December 14, 1974. They were advised of an armed robbery on North Lake Street, and given a description of the gunman and his vehicle and the license number of the auto. After requesting information on the registration of the plates, the officers were told that they had been issued to defendant, living at 827 North Lake Street, for an auto matching the description of the vehicle used in the robbery. This information was received just as the officers drove by the defendant's address. They pulled into that building's parking lot in time to see a man walking away from a vehicle, both the individual and the auto matching the description earlier given the officers.

The two officers left their car, approached defendant with their guns drawn and ordered him to place his hands on the roof of the car. Officer Lucas searched the defendant and in so doing uncovered a revolver which the officer indicated was concealed in defendant's pants. Transported to the Aurora Police Station, defendant was asked if he had a current Firearm Owner's Identification Card and replied in the negative. During the trial, however, defendant, appearing pro se, showed the judge a valid identification card bearing an issuance date of December 14, 1974, the date of the incident. Defendant also showed the judge his expired identification card and explained that, although he had applied for the new card before the void card's expiration date, he had not received it before that date. After his arrest he again requested that a new card be forwarded to him. Defendant could not corroborate his claim that he had

applied for the card before the prior card's expiration date as he had not retained a copy of the application. The trial judge ruled that the new card could not be admitted into evidence because it was irrelevant to the charges at issue.

Defendant first complains that he did not knowingly waive his right to trial counsel. On this issue the bystander's report states:

> "After a preliminary discussion during which the defendant Cahill was advised of his rights, including his right to counsel, his right to be tried by a jury, his right to confront the witnesses against him and to subpoena witnesses to appear on his behalf, and during which he was advised of the possible penalties for conviction upon one or both of the pending charges, the defendant stated he was ready to proceed with his trial on that day and before the Court."

In *People v. Hopping*, 60 Ill. 2d 246 (1975), a consolidated appeal of three cases, one defendant, who had appeared pro se and pled guilty, contended that he had not knowingly waived his right to counsel. In the bystanders record of that case it was stated:

> " '[T]he Court fully explains to defendant his rights under the law, his right to counsel and his right to a jury trial if he so desires, and further explains to the defendant the consequence and penalties which will result from a plea of guilty  *  *  *.' "60 Ill. 2d 246, 248.

While the court did not specifically find that this summation adequately reflected a knowing and intelligent waiver of counsel, it impliedly held so, for while focusing on the requirement of Supreme Court Rule 401(c) (Ill. Rev. Stat. 1973, ch. 110A, §401(c))[1] as it relates to the validity of a bystander's report, it upheld defendant's conviction. The fact that defendant Hopping entered a guilty plea, while defendant in the instant case waived counsel for the purpose of contesting the charge, is not germane since both the entering of a plea of guilty without counsel and the determination to conduct one's own defense must be preceded by the same knowing and intelligent waiver of the right to counsel. See, *e.g.*, *People v. Schrodt*, 8 Ill. App. 3d 660, 662 (1972); compare *People v. Lindsey*, 17 Ill. App. 3d 137, 139-41 (1974) (waiver standard when defendant waives counsel to conduct own defense) with *People v. Melvin*, 28 Ill. App. 3d 1090, 1092-93 (1975) (waiver standard when defendant waives counsel and pleads guilty).

■■ We believe that the implications of *Hopping* control here. To effectively waive the right to counsel the record need not detail defendant's utterance of "magic words." What the record must reflect is that defen-

---

[1] Supreme Court Rules 401(a) and 401(c) together provide that the proceedings in which a defendant waives the right to counsel shall be taken verbatim, transcribed, and be incorporated into the record where the crime charged is punishable by imprisonment in the penitentiary.

dant, having been admonished by the court, intelligently chose to waive his right to counsel. The bystander's report in this case contains that reflection and we reject defendant's argument to the contrary.

Defendant's final contention is that the trial court erred by not allowing him to introduce his valid Firearm Owner's Identification Card into evidence in order to establish that he possessed the same. He argues that although he was not carrying the card at the time of his arrest, the existence of a valid card, issued on the date of his arrest constitutes constructive possession. He concludes that not only is the card relevant but it is also dispositive of his guilt.

■■ We disagree. Section 2(a) of the Firearms and Ammunition Act states:

> "No person may acquire or possess any firearm or any firearm ammunition within this State *without having in his possession* a Firearm Owner's Identification Card * * *." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 38, §83—2(a).)

(See *People v. Brownlee*, 17 Ill. App. 3d 535, 540 (1974).) Defendant would have us imply in this section the same type of exculpatory provision which is explicit in the driver's license possession statute, *i.e.*, no person is guilty of nonpossession "if he produces in court satisfactory evidence that a drivers license was theretofor issued to him and was valid at the time of his arrest." (Ill. Rev. Stat. 1973, ch. 95½, §6—112.) If the legislature had intended the crime of failure to possess a Firearm Owner's Identification Card to be interpreted in a similar manner, it would have similarly included such a clause within the Act's provisions. We, therefore, agree with the trial court, that regardless of defendant's owning a valid identification card, he admittedly did not have it in his possession at the time of his arrest. Mere existence of such card is irrelevant to its "possession."

Affirmed.

RECHENMACHER and DIXON, JJ., concur.