THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT LOFTON, Defendant-Appellant.

First District (4th Division)   Nos. 62111, 76-126 cons.

Opinion filed September 8, 1976.

BURMAN, J., dissenting.

Wendell P. Marbly, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Larry L. Thompson, and Linda Dale Woloshin, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Robert Lofton, was charged with unlawful use of weapons (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(a)(10)), and aggravated assault (Ill. Rev. Stat. 1975, ch. 38, par. 12—2(a)). After a jury trial, he was convicted and sentenced to 1-year probation, the first 7 days of which were to be served in the House of Correction. He appeals from his conviction and raises the following issues for review: (1) whether the defendant knowingly waived his right to a jury trial; (2) whether the complaint was defective because it failed to allege an element of the offense charged; and (3) whether the defendant was exempted from the charge of unlawful use of weapons because of his position as a licensed detective.

At the trial, Victor Mladic was called as the first witness for the prosecution. He testified that on January 19, 1975, at about 1:30 a.m., he was sitting in a car that had stopped for a red light at Damen and Blue Island in the city of Chicago. When the light changed, the car ahead of the car the witness was in, pulled into the intersection and was struck by a vehicle traveling east on Blue Island at about 70 miles per hour. After hitting the vehicle in the intersection, the driver continued traveling east on Blue Island so the witness told his companion to follow him. When the cars reached Ashland, the witness' vehicle passed the defendant's car and forced it to the side of the street. Then the witness stated that he and his brother approached the car and opened the door where they found the defendant with a gun in his hand. The witness related how he disarmed the defendant and, with the assistance of his brother, they removed him from the car and held him for the police.

The next witness, Officer Dave Ryeczyk, testified that he responded to a ten-one "officer needs help" on January 19, 1975. And, when he arrived on the scene, he observed a group of people holding the defendant. One man turned a gun over to the officer so the defendant was placed under arrest and advised of his rights. On cross-examination, the officer testified that the defendant's face was bleeding when he arrived on the scene. He also stated that he had no conversation with the defendant other than advising him of his rights.

After the State rested its case, the defendant testified that he was involved in a collision on January 19, 1975, and was temporarily "knocked out." The witness theorized that he bumped his head on the windshield and steering column and testified that he received four stitches as a result of the injury. Although he did not remember what happened immediately following the accident, after stopping his car and attempting to regain his composure, he testified that his car was surrounded by other vehicles and he was removed from his car and beaten. At this point, the witness pointed out that he was a private detective, that he had the gun on the seat, but he denied pointing it at Mr. Mladic. He concluded direct

examination by testifying that he was employed by the Inter-Urban Detective Group and the State stipulated to his production in court of an Illinois Department of Law Enforcement card, a city of Chicago registration card, a State Firearm Owners Identification card and an identification card from the Inter-Urban Detective and Security Group.

On cross-examination, the witness testified that he was investigating a divorce case and completed his work at 1 a.m. And, although the witness admitted being involved in an automobile accident, he denied having a gun in his possession when his car was stopped.

■■ The threshold question to be resolved in this case is whether the defendant waived his right to a jury trial. Defendant contends that he did not knowingly and understandingly waive his right to a jury trial and as evidence to support this contention, he quotes from the following colloquy that took place prior to trial:

"THE COURT: Mr. Laughton [*sic*], you are charged with unlawful use of weapons, failure to possess State Firearm Owner's Identification card, aggravated assault, failure to register a weapon with the city. Are you ready for trial on these charges today?

MR. LAUGHTON: Yes, sir.

THE COURT: State ready?

MR. WHITE: State will be ready.

THE COURT: Do you have a lawyer to represent you?

MR. LAUGHTON: No, sir.

THE COURT: Do you have money to hire a lawyer?

MR. LAUGHTON: Yes, sir. But, I don't need a lawyer. My weapon was registered and I work for a private detective agency.

THE COURT: You don't have a lawyer with you today?

MR. LAUGHTON: No, sir.

MR. WHITE: State seeks leave to amend the complaint and insert Cook County, Illinois.

THE COURT: No leave to amend until we have an attorney present.

MR. WHITE: State is ready.

THE COURT: We'll appoint the public defender to represent you, sir. Have a seat and he'll talk to you in a few minutes.

THE CLERK: Robert Laughton.

MR. SILETS: Your Honor, defendant is ready for trial. Plea of not guilty, jury waived.

MR. WHITE: The state is ready for trial. The state seeks leave to amend the complaint alleging aggravated assault and insert the words, Cook County, Illinois.

THE COURT: Any objection?

MR. SILETS: No objection, waive re-swearing and reverification.

THE COURT: Is there a motion?

MR. SILETS: No motion.

(witnesses sworn)

THE COURT: Plea not guilty, jury waived?

MR. SILETS: Yes."

The defendant points out that the colloquy in the instant case is identical to the one in *People v. Brodus* (1974), 19 Ill. App. 3d 840, 313 N.E.2d 511, where this court held that there was no knowing or understanding jury waiver. While we are aware of the case relied on by the defendant, it should be noted that *Brodus* was reversed by our supreme court in a consolidated case which held that "[a] defendant who permits his attorney, in his presence and without objection, to waive his right to a jury trial is deemed to have acquiesced in, and is bound by, his attorney's action." (*People v. Murrell* (1975), 60 Ill. 2d 287, 290, 326 N.E.2d 762.) We see no reason why *Murrell* should not be followed in the instant case since the defendant remained silent and raised no objections to counsel's appointment or actions. Consequently, we hold that defendant waived his right to a jury trial. See *People v. Jones* (1975), 28 Ill. App. 3d 175, 177, 328 N.E.2d 336; *People v. Burnett* (1975), 35 Ill. App. 3d 109, 116, 341 N.E.2d 86.

■■ The defendant's next contention is that the complaint was invalid because the words "without lawful authority" were omitted in the aggravated assault count and this omission renders the complaint invalid. He relies on *People v. Crane* (1971), 3 Ill. App. 3d 716, 279 N.E.2d 134, and *People v. Whelan* (1971), 132 Ill. App. 2d 2, 267 N.E.2d 364, as authority to support his argument. However, our supreme court held in *People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437, when considering a case challenging the sufficiency of a complaint attacked for the first time on appeal because of a failure to allege an element of the offense, that the failure to allege an element of the offense did not make the complaint void as a matter of law. In *Pujoue*, the court stated, at page 339:

"When attacked for the first time on appeal a complaint is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. [Citations.]"

After examining the complaint in the case at bar, we concluded that the charge was stated with sufficient specificity to enable counsel to prepare a defense. Moreover, once jeopardy attached, the resulting conviction could be used as a bar to future prosecution. Therefore, we hold the

complaint to be valid because defendant challenged the sufficiency of the complaint for the first time on appeal. Nevertheless, we do not think that defendant's conduct, which included speeding and being involved in an automobile accident, was such as to make him criminally culpable, thereby bringing him within the reach of the prohibition contained in the aggravated assault statute. In fact, the evidence establishes that Victor Mladic and his brother were the aggressors—they assaulted the defendant by physically removing him from his car and by keeping him subdued until the police arrived. It is this kind of conduct that the statute proscribes and, consequently, we reverse the defendant's conviction on the aggravated assault charge.

■■ Finally, the defendant argues that he was exempted from the charge of unlawful use of weapons because he was working as an agent for a licensed detective agency at the time of his arrest. Although the State concedes that defendant was a licensed detective and that he produced city and State identification at trial, they still maintain that he has failed to prove that he falls within the statutory exemption because suitable documentation to demonstrate that he successfully completed a training course was not produced as required by statute. This court has recently held that a defendant must produce evidence sufficient to place the question of exemption into issue; and where the evidence establishes that the defendant was employed as a security guard at the time of the occurrence and exempt from the statute, the conviction for unlawful use of weapons has been reversed. (*People v. Williams* (1975), 28 Ill. App. 3d 67, 328 N.E.2d 192; *People v. Johnson* (1975), 27 Ill. App. 3d 541, 327 N.E.2d 424.) The statute relied upon by the State provides that documentation will be provided upon successful completion of the training course, and it requires the security guard (defined to include a person employed by a licensed detective agency) to carry the card at all times when he is in possession of a weapon. (Ill. Rev. Stat. 1975, ch. 38, par. 24—2(a)(4).) We think it is significant to note that the statute requires that a training course be completed before documentation is issued, and we also note that the evidence establishes that defendant completed the 30-hour course. While it is true that the statute requires the guard to carry documentation at all times, we think the fact that defendant completed the training course thereby qualifying for a card, coupled with the fact that he had other city and State identification to demonstrate that he was a private detective, is sufficient to bring him within the reach of the statutory exemption. In light of the preceding, we hold that defendant, a private detective, is within the purview of the statutory exemption; therefore, we reverse his conviction on the unlawful use of weapons charge.

For the foregoing reasons, defendant's convictions of aggravated assault and unlawful use of weapons are reversed.

Reversed.

DIERINGER, J., concurs.

Mr. JUSTICE BURMAN, dissenting:

I would affirm the defendant's convictions for aggravated assault (Ill. Rev. Stat. 1973, ch. 38, par. 12—2(a)(1)) and unlawful use of weapons (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(10)).

By reversing defendant's conviction of aggravated assault, the majority of this court has overreached the traditional bounds of appellate review. It is the function of the trier of fact to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. (*People v. Zuniga*, 53 Ill. 2d 550, 559, 293 N.E.2d 595, 600.) Accordingly, where the evidence is merely conflicting, a court of review will not substitute its judgment for that of the trier of fact. *People v. Akis*, 63 Ill. 2d 296, 298-99, 347 N.E.2d 733, 734.

Section 12—1 of the Illinois Criminal Code provides that a person commits an assault when, without lawful authority, he engages in conduct which places another in reasonable apprehension of receiving a battery. (Ill. Rev. Stat. 1973, ch. 38, par. 12—1.) Section 12—2(a)(1) makes that assault aggravated when the person uses a deadly weapon. (Ill. Rev. Stat. 1973, ch. 38, par. 12—2(a)(1).) I agree with the majority that the mere fact defendant was speeding and involved in an automobile accident does not render him guilty of aggravated assault. But the evidence shows more.

Victor Mladic testified that he and his brother gave chase to defendant and pulled their car in front of his. A second car, also in pursuit of defendant, subsequently pulled up behind him. Mladic and his brother then approached defendant's car. As Mladic opened the door, he noticed that defendant was raising a gun. He knocked the gun from defendant's hand, and along with his brother pulled defendant from his car. Defendant then started swinging, but eventually was subdued by Mladic and his brother. Mladic picked up the gun and later gave it to the police officer who arrived at the scene. Both the gun and the cartridges it contained were admitted into evidence. Defense counsel stipulated that the gun was recovered from defendant.

As I have stated above, a person commits an aggravated assault, when, without lawful authority, he uses a deadly weapon to place another in reasonable apprehension of receiving a battery. Clearly the evidence demonstrates that by his conduct defendant placed Victor Mladic in reasonable apprehension of being shot. Apparently the majority of this

court believes from the conflicting evidence that defendant's conduct was justified under the circumstances. Again I must state that where the evidence is merely conflicting, a court of review should not substitute its judgment for that of the trier of fact. This is particularly true in a case such as this where there is no request by appellate defense counsel to do so. For these reasons I would affirm defendant's conviction of aggravated assault.

I further believe that the defendant did not comport with all the statutory prerequisites which exempt security guards from being charged and convicted for unlawful use of weapons. According to section 24—2(a)(4) of the Criminal Code of 1961, an individual does not violate section 24—1(a)(10) of the Code (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(10)) if he is a security guard who (1) is actually engaged in the performance of his duties of employment or is commuting between his home and place of employment; (2) has successfully completed a 30-hour course of study approved by the Department of Registration and Education; and (3) carries, at all times in which he possesses a concealable weapon, suitable documentation from the above department that he successfully completed such course. (Ill. Rev. Stat., 1973, ch. 38, par. 24—2(a)(4).) Moreover, as the majority notes, the defendant has the burden of producing a quantum of evidence that sufficiently places the question of exemption in issue before the State must prove the defendant guilty of said issue beyond a reasonable doubt. *People v. Williams*, 28 Ill. App. 3d 67, 70, 328 N.E.2d 192, 195.

Applying the above legislative provision and legal precept to the case at bar, it is apparent that the defendant could not avail himself of section 24—2(a)(4) of the Code (Ill. Rev. Stat. 1973, ch. 38, par. 24—2(a)(4)). Besides the State's contention on review over whether the defendant was actually engaged in the performance of his duties of employment at the time of his arrest,[1] the record unequivocally demonstrated that on the night of the incident, the defendant did not possess suitable documentation from the Department of Registration and Education that he had successfully completed his course of study. While my colleagues, in reversing the defendant's conviction for unlawful use of weapons, rely on (1) the defendant's testimony that he had other city and State identification on the night in question, and (2) that he had, in fact, completed the 30-hour training course, it is important to note that such information merely satisfied the defendant's burden of producing a

---

[1] The State takes issue in its brief with the defendant's testimony that he was investigating a divorce case at the time of the incident. While the defendant maintained on cross-examination that he was trying to locate a man's wife and children at 1 in the morning, the State posits that such testimony is incredible and the trial judge, sitting as trier of fact, was not obligated to believe such account.

quantum of evidence sufficient to place the exemption issue in question. (*People v. Williams,* 28 Ill. App. 3d 67, 71, 328 N.E.2d 192, 195.) Moreover, by eliciting from the defendant on cross-examination that he did not possess a card on January 19, 1975, showing that he had completed the training course, the State did meet its burden of proving that the defendant did not fall within the ambits of section 24—2(a)(4) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 24—2(a)(4)).

Besides the majority misapprehending the purpose of the information which they believed warranted a reversal of the defendant's conviction for unlawful use of weapons, their reliance on such factors evidently caused them to ignore the unambiguous language contained in the provision exempting security guards. Pursuant to section 24—2(a)(4) of the Criminal Code of 1961, it is incumbent upon a security guard to carry the documentation he received from the Department of Registration and Education "at *all times* when he is in possession of a concealable weapon." (Ill. Rev. Stat. 1973, ch. 38, par. 24—2(a)(4).) (Emphasis added.) Contrary to the explicit exculpatory provision regarding the failure to possess a driver's license contained in section 112 of the Illinois Driver Licensing Law (Ill. Rev. Stat. 1973, ch. 95½, par. 6—112),[2] section 24—2(a)(4) of the Code does not delineate an exception to the above language if a particular defendant produces (1) other identification cards at the time of his arrest or (2) the required card subsequent to his arrest for such violation. Thus, the mere fact that the defendant had other city and State identification or that he had completed the 30-hour training course was of no consequence since the record evinced that he failed to carry the required documentation on January 19, 1975, while in the possession of a concealable weapon. See *People v. Cahill,* 37 Ill. App. 3d 361, 364, 345 N.E.2d 528, 530.

In light of the above reasoning, I therefore believe that the pertinent legislative enactments and legal tenets governing the case at bar militate against the bases adopted by my colleagues in deciding to reverse the defendant's convictions for aggravated assault (Ill. Rev. Stat. 1973, ch. 38, par. 12—2(a)(1)) and unlawful use of weapons (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(10)). Hence, the judgment of the trial court should be affirmed.

---

[2] Section 112 of the Driver Licensing Law provides in relevant part:

"Every licensee or permittee shall have his drivers license or permit in his immediate possession at all times when operating a motor vehicle and, for the purpose of indicating compliance with this requirement, shall display such license or permit if it is in his possession upon demand made, when in uniform or displaying a badge or other sign of authority, by a member of the State Police, a sheriff or other police officer or designated agent of the Secretary of State. *However, no person charged with violating this Section shall be convicted if he produces in court satisfactory evidence that a drivers license was theretofor issued* to him and was valid at the time of his arrest." (Ill. Rev. Stat. 1973, ch. 95½, pars. 6—112.) (Emphasis added.)