THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLIE FRANCIS, Defendant-Appellant.

First District (4th Division)   No. 76-931

Opinion filed September 1, 1977.

ROMITI, J., dissenting.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Wendy Paul Billington, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Following a bench trial, Charlie Francis, defendant, was found guilty of unlawful use of weapons, in violation of section 24—1(a)(10) of the Criminal Code of 1961. (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(a)(10).) He was sentenced to 1-year conditional discharge on the condition that he serve 2 days in custody, time considered served, and fined the amount of his bail bond deposit. The weapon involved was confiscated. The record indicates that defendant was also found guilty of a municipal charge of unlawful use of weapons, in violation of section 11.2—1 of the Municipal Code of the city of Chicago, Illinois, and that he was found not guilty of failure to possess a firearm owner's identification card. (Ill. Rev. Stat. 1975, ch. 38, par. 83—2(a).) The record also indicates that no sentence was imposed upon the conviction of the municipal charge.

The only issue presented for review is whether the State failed to rebut beyond a reasonable doubt the defendant's affirmative defense of his exemption from the unlawful use of weapons statute on the ground that he was employed as a security guard at the time of his arrest. Ill. Rev. Stat. 1975, ch. 38, par. 24—2(a)(4).

At the outset of the trial, the parties entered a stipulation that the State's evidence would show defendant was arrested in Chicago on February 19, 1976, for possession of a loaded handgun while not in his home or on his property. Police Officer O'Connor testified for the State that he and his partner arrested defendant at 1:15 p.m. on that date near 47th Street and Kimbark Avenue, in the city of Chicago. This was the second time they had stopped defendant that day. Defendant was asked by the officers whether he was carrying a firearm owner's identification card and defendant responded that he possessed such card but did not have it on his person at that time.

Defendant testified in his own behalf that he was a security agent and supervisor employed by the W. L. Lillard Bureau of Investigation. He had

worked in such capacity at Provident Hospital from 4 p.m. to midnight on the evening preceding his arrest. He related that he was assigned to service the A & P food store at 4646 Drexel at 9 a.m. the following morning as a replacement for a newly hired agent who had not shown up for work. Defendant stated that the new agent arrived at the store about 10:30 a.m., but that he (defendant) remained on duty at the store to supervise the work of the new employee which was normal agency procedure.

Defendant further testified that he was first approached by the arresting officers about 12:30 p.m. while seated in an automobile parked near 51st Street and Woodlawn Avenue; that he then related to the officers that he was on his lunch break and was waiting for a woman to return to the car with food. The officers asked for his driver's license, which he did not have, but he did give them identification in the form of a State Firearm card, and Illinois State registration and identification card, commonly known as a blue card, and a W. L. Lillard Bureau of Investigation card. The three cards were admitted into evidence at trial without objection.

Defendant also testified that the officers issued a traffic citation for failure to possess a driver's license and told him they would arrest him if they saw him again. Following the first encounter with the police officers, defendant related that he returned to the A & P store on Drexel Avenue, where he remained for about 10 minutes. He claimed that he then "went off duty," left the store, and as he was driving in an easterly direction away from the store, he was again stopped and arrested by the same officers near 47th and Woodlawn Avenue. He was stopped within 4 to 5 minutes after his departure from the store. Defendant testified that he told the officers he had "just taken off" and was on his way to purchase cigarettes at a location where the price was lower than at the A & P where he was stationed. Defendant also related that his normal work assignment covered 8 hours, that he had worked additional periods as a backup "plenty of times," but that he received the "same money" whenever he worked backup hours. On the date of his arrest, defendant resided in the 7100 block of South Bell Avenue, in Chicago.

Police Officer Larson, one of the arresting officers, was initially called as a defense witness but was later questioned as an adverse witness. He related that the officers approached defendant on the first occasion because he was seated in a car parked in a no-parking zone. While being questioned regarding his purpose at that location, defendant was unable to produce a driver's license. Defendant told the officers that he did not have a firearm owner's identification card with him, but when defendant produced his "blue card" and the Lillard security agency card, the officers "assumed" that he had proper identification to carry a gun. The witness' report recited that defendant exhibited "proper identification to

carry a firearm" and that he was released after he told the officers that he was on his lunch break. The officer further testified that he and his partner "did not pursue" the matter after defendant revealed the foregoing matters to them, but that defendant was told to "go back on it" after he was finished eating.

Officer O'Connor testified for the State in rebuttal. He related that when defendant was stopped the first time at 12:30 p.m., he told the officers that he had worked the 4 p.m. to midnight security shift at Provident Hospital and was presently filling in for another security guard at the A & P store. The witness testified that when defendant was stopped 45 minutes later, he told the officers that he was on his way to purchase cigarettes and that he had been relieved from duty at the store about 10:30 a.m. However, the arrest report did not show that defendant told the officers he had been relieved at 10:30 a.m. The officer stated defendant did not say he had just left work.

Section 24—1(a)(10) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(a)(10)) provides in pertinent part that a person commits the offense of unlawful use of weapons when he knowingly carries or possesses a loaded firearm on or about his person within the corporate limits of a city, except when on his land or in his abode or fixed place of business. The State's evidence established the elements of that offense.

■■ Defendant argues that possession of the weapon was justified on the ground that he was a security guard at the time of the arrest, and was traveling within 1 hour from the time of his departure from his assignment, thereby coming within the exemption provided in section 24—2(a)(4) of the Criminal Code of 1961. (Ill. Rev. Stat. 1975, ch. 38, par. 24—2(a)(4).) The section provides in pertinent part that section 24—1(a)(10) does not apply to

> "* * * security guards while actually engaged in the performance of the duties of their employment or commuting between their homes and places of employment, provided that such commuting is accomplished within one hour from departure from home or place of employment, as the case may be, * * *."

Section 24—2(a)(4) is known as the security guard exemption and it constitutes an affirmative defense to the offense of unlawful use of weapons.

In support of his argument, defendant relies on *People v. Williams* (1975), 28 Ill. App. 3d 67, 328 N.E.2d 192. Defendant contends that he virtually offered the same proof as in *Williams,* that the State failed to prove beyond a reasonable doubt that he was not covered by the security guard exemption, and, therefore, he concludes that his conviction should be reversed.

In *Williams,* the defendant offered into evidence his State identification and gun cards, his security agent's employee card, and a time sheet from his office indicating that he had been employed the week of the arrest. He testified that he was on his way to work at the time of the arrest. The defense argued that defendant was exempt under section 24—2(a)(4) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 24—2(a)(4)). The State contended that defendant failed to prove his defense. The court noted that the burden of proof never shifts to the defendant no matter what his defense may be (*People v. Durand* (1923), 307 Ill. 611, 620, 139 N.E. 78, 82). The court interpreted section 24—2(f) of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 24—2(f)) (now Ill. Rev. Stat. 1975, ch. 38, par. 24—2(g)) as placing the burden on the defendant to produce a quantum of evidence sufficient to place the question of exemption in issue. The *Williams* court further noted, relying on *People v. Rinehart* (1967), 81 Ill. App. 2d 125, 225 N.E.2d 486, that once an affirmative defense is raised, the burden is on the State to prove defendant guilty beyond a reasonable doubt as to that issue. The court concluded that defendant had presented sufficient evidence to bring himself within the exemption, and that the State had failed to meet its burden of proof.

The quantum of evidence which must be adduced in order to raise the security guard exemption has been the subject of some conflict. In *People v. Johnson* (1975), 27 Ill. App. 3d 541, 327 N.E.2d 424, the defendant was arrested on his way to purchase supplies for one of his assignments. The court found that he was in the actual performance of his duties as a security guard and, therefore, the exemption applied.

In *People v. Randle* (1975), 26 Ill. App. 3d 713, 325 N.E.2d 345 (abstract), the defendant testified he was en route to his home within 1 hour from the time of his departure from his security guard assignment. The court found that the defendant sufficiently raised the exemption.

In *People v. Lofton* (1976), 42 Ill. App. 3d 211, 355 N.E.2d 674, the court noted that completion of the training course which qualified defendant for documentation to carry a gun, coupled with the fact that he had other city and State identification to demonstrate that he was a private detective (who are included under the questioned exemption), was sufficient to bring him within the security guard exemption. Also, the opinion discloses that the defendant had left his assignment a half hour before his arrest, but does not show he was en route to his home.

■■ After reviewing these cases, we hold that defendant in the instant case presented a quantum of evidence sufficient to bring himself within the security guard exemption. The defendant offered into evidence his employment with Lillard and his permit to carry a gun. He testified that he made statements to the police that he "just took off" and "went off duty." This evidence, combined with the circumstance that he had just

finished his assignment at A & P, was sufficient to raise the exemption (see *Lofton,* at 215), even though the defendant did not specifically present evidence that he was on his way to work or home as was the case in *Williams* and *Randle,* respectively. (*People v. Williams* (1975), 28 Ill. App. 3d 67, 76, 328 N.E.2d 192, 195; *People v. Randle* (1975), 26 Ill. App. 3d 713, 325 N.E.2d 345 (abstract).) The fact that defendant's testimony shows he was on his way to purchase cigarettes is not significant enough to disqualify him from the coverage of the exemption, since buying a pack of cigarettes cannot be considered to be his ultimate destination.

The State argues that it has sustained the burden of proving defendant guilty beyond a reasonable doubt as to the issue of the exemption. Office O'Connor testified for the State on rebuttal. He testified that after stopping the defendant a second time, the defendant told him that he had been relieved from duty at the A & P store at 10:30 a.m., which placed the defendant outside the coverage of the exemption.

■■ The State must prove beyond a reasonable doubt that defendant was not covered by the exemption. (*People v. Williams* (1975), 28 Ill. App. 3d 67, 71, 328 N.E.2d 192, 195.) The State has failed to sustain its burden. If the defendant told Officer O'Connor that he had been relieved from duty at 10:30 a.m., that statement should have been included in the arrest report. It was not. Furthermore, no attempt was made by the State to introduce the employment time records of Mr. Francis into evidence to rebut his testimony that he went off duty 4 to 5 minutes before he was arrested. It is evident that the proof offered by the State was inadequate to rebut or controvert defendant's case so as to place defendant outside the exemption.

We attach great weight to the findings of the trier of fact, including his appraisal of the credibility of the witnesses, but they are not conclusive and it is our duty to set a conviction aside where the evidence is so unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Rinehart* (1967), 81 Ill. App. 2d 125, 130, 225 N.E.2d 486, 489.) Since the proof offered by the State was inadequate, the judgment of conviction is reversed.

■■■ A matter not raised by the parties is the question of the viability of defendant's conviction under the municipal charge of unlawful use of weapons upon which no sentence was imposed. Where multiple convictions have been entered but only a single sentence has been imposed, and it is clear that the sentence was not intended to run concurrent as to all convictions, the judgment is incomplete and the conviction upon which no sentence has been imposed must be vacated. (*People v. Cook* (1976), 41 Ill. App. 3d 946, 954-56, 354 N.E.2d 122, 129-30; *People v. Robinson* (1976), 41 Ill. App. 3d 526, 532, 354 N.E.2d 117, 122.) The penalty which must be imposed for a violation of the municipal

ordinance relating to unlawful use of weapons here involved is a fine of $500. (Municipal Code of Chicago, Illinois (1968), §§11.2—1, 11.2—2.) The trial court, however, assessed a fine in the amount of defendant's bond deposit, which was $100, less bond costs. It is evident that the trial court did not intend to sentence defendant upon the municipal conviction and that conviction must be vacated.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

DIERINGER, P. J., concurs.


Mr. JUSTICE ROMITI, dissenting:
I agree with the majority that the defendant is relying on the exemption provided in section 24—2(a)(4) of the Criminal Code. I cannot, however, agree with my colleagues that the defendant has been brought within the purview of that statute or that the evidence adduced at trial establishes a "quantum of evidence" sufficient to place the exemption in issue.

The exemption provided in section 24—2(a)(4) is an affirmative defense. Since the State's case did not raise such issue in the first instance, it was incumbent upon defendant to adduce evidence raising the issue. (Ill. Rev. Stat. 1975, ch. 38, pars. 3—2(a), 24—2(g).) While it may be true, as the majority suggests, that the quantum of evidence which must be adduced in order to raise an affirmative defense has been the subject of some conflict, it seems clear to me that in the instant case the defendant failed to adduce sufficient evidence raising the issue of his exemption as a security guard which would otherwise necessitate rebuttal by the State beyond a reasonable doubt. The statute cannot and should not be construed as giving security guards the right to carry weapons other than within the precise limits prescribed by the statutory language. The abuses and dangers implicit in any other interpretation are all too obvious to require delineation in this opinion.

The statutory language of the exemption for a security guard contained in section 24—2(a)(4) is clear: the accused must be a security guard in the actual performance of his duties or commuting between his home and place of employment. Defendant presented evidence to the trial court that he was in fact employed as a security guard, but he did not inform the officers or testify at trial that he was engaged in his duties in that regard at the time of his arrest or commuting between his place of employment and his home at that time. Rather, the record shows at the time of the arrest defendant was en route to purchase cigarettes where he

had not worked. Defendant's evidence at trial further disclosed that he was traveling in an opposite direction from his home.

The conflict in the evidence as to whether or not defendant informed the officers that he had just gotten off duty is thus immaterial, since the evidence adduced showed that he was neither actively engaged in the performance of his duties as a security guard nor commuting between his place of employment and his home. (*C.f. People v. Johnson* (1975), 27 Ill. App. 3d 541, 544, 327 N.E.2d 424.) Since defendant failed to properly raise the issue of his alleged exemption under section 24—2(a)(4) of the Criminal Code, the State was not required to prove him guilty beyond a reasonable doubt as to that issue. Ill. Rev. Stat. 1975, ch. 38, pars. 3—2(b), 24—2(g).

The cases cited in the majority opinion are distinguishable and are not supportive of that opinion. On the contrary those cases clearly support the position taken here.

In *People v. Williams* (1975), 28 Ill. App. 3d 67, 328 N.E.2d 192, a case exclusively relied upon by the defendant, this division of this court noted that defendant's evidence at trial included not only documentary evidence that he was employed as a security guard, but also evidence that he was en route to work in the capacity. In *People v. Randle* (1975), 26 Ill. App. 3d 713, 325 N.E.2d 345 (abstract), the defendant testified he was en route home within one hour of his departure from his employment as a security guard. In *People v. Johnson* (1975), 27 Ill. App. 3d 541, 327 N.E.2d 424, defendant's testimony indicated he was in the actual performance of his job as a security guard.

*People v. Lofton* (1976), 42 Ill. App. 3d 211, 355 N.E.2d 674, is distinguishable because in that case the defendant's conviction was reversed based on the appellate court's determination that another provision of the exemption, possession of documentation as to completion of a required training course, was not essential to the defense. It is true that some of the evidence as summarized in that opinion indicates that the defendant had completed his work half an hour before his arrest. But the court also cites the defendant's contention that he was working at the time of his arrest, a contention which would eliminate the need to show that the defendant was on his way home. At any rate the case was decided on the documentation issue and thus is no support for the majority opinion in this cause.

Both *Johnson* and *Lofton* were also decided by this division of this court which noted in *Johnson* at page 544 that the record did not show that the defendant was on "a private jaunt of his own." Such a claim cannot be made in the case at bar.

It is my opinion that contrary to the circumstances presented in the foregoing cases, and contrary to the State's concession, the defendant's

evidence was clearly insufficient to have raised the security guard exception which would otherwise have necessitated rebuttal beyond a reasonable doubt by the State. I would, therefore, affirm.