

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-19-2008

# USA v. Booker

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3725

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Booker" (2008). *2008 Decisions*. Paper 1422.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1422

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-3725
_____

UNITED STATES OF AMERICA

v.

CHRISTOPHER BOOKER,
Appellant

_____

Appeal from the
United States District Court for the
District of New Jersey
(D.C. No. 05-cr-00313)
District Judge: The Honorable Jerome B. Simandle

_____

Argued on December 11, 2007

_____

Before: SLOVITER and AMBRO, Circuit Judges, and
RESTANI*, Judge

(Filed: March 19, 2008)

_____

        *Honorable Jane A. Restani, Chief Judge of the United States Court of
International Trade, sitting by designation.

Patrick L. Meehan
    United States Attorney
Robert A. Zaumer
    Assistant United States Attorney,
    Chief of Appeals
Joseph T. Labrum, III (Argued)
    Assistant United States Attorney
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

    Counsel for Appellee

Lori M. Koch
Thomas Young (Argued)
    Assistant Federal Public Defenders
Office of Federal Public Defender
800-840 Cooper Street, Suite 350
Camden, NJ 08102

    Counsel for Appellant

_____

OPINION OF THE COURT
_____

RESTANI,  Judge

Christopher Booker ("Booker") appeals his convictions for possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (2000), and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) and (2) (2000).  On appeal, Booker contends that the District Court erred in denying his pretrial motions to suppress evidence resulting from allegedly illegal searches of his hotel room.  He also contends that his arrest on October 29, 2004, was

without probable cause and that any evidence obtained from the search incident to arrest should have been suppressed as fruit of the poisonous tree.  For the reasons stated below, we find that the arresting officers had probable cause to arrest Booker.  We will therefore affirm the decision of the District Court denying Booker's motion to suppress.

## Procedural and Factual Background

On October 27, 2004, Officer Paul Petinga of the Atlantic City Police Department, while on routine patrol, approached Booker outside of the Best Western Envoy Hotel ("hotel"), located at St. James and Pacific Avenues in Atlantic City, New Jersey.  Officer Petinga had first noticed Booker loitering in front of the hotel, an area known by Petinga to be a "high drug crime area," at approximately 3:30 a.m.  At approximately 6:15 a.m., having driven past Booker four or five times, Officer Petinga conducted a stop pursuant to Terry v. Ohio, 392 U.S. 1 (1968).  Officer Petinga asked Booker several questions and advised him that the neighborhood was a high-crime area.  Booker informed the officer that he was staying at the hotel because he was in town for a court appearance that morning and provided Officer Petinga with a Pennsylvania identification card bearing his name and photograph. Officer Petinga ran a check on Booker's identification card, which failed to reveal any outstanding warrants for Booker's arrest.  The following day, however, Officer Petinga learned from another Atlantic City police officer that there was, in fact, an outstanding warrant for Booker's arrest found while searching under a different system.

3

On October 29, 2004, a maid at the hotel discovered two guns in the bathroom trash can of Room 309. She immediately notified the hotel manager, Sunil Pillay, who, in turn, notified Officer Petinga. Officers Petinga and Michael Gavin arrived on the scene within minutes and confirmed the identity of the occupant of Room 309 (Booker) by checking the hotel's registry, which included a copy of Booker's identification card. Officer Petinga immediately recognized Booker as the person he had encountered in front of the hotel two days earlier.

Shortly thereafter, three more officers arrived at the hotel. At the officers' request, Pillay created a new electronic key for Room 309, effectively locking Booker out of his room. All five officers were escorted to Room 309 by Pillay. The officers knocked on the door and identified themselves as police. When there was no response, Pillay unlocked the door using the new key. Officers Gavin and Petinga entered the room with their guns drawn, and confirmed that no one was in the room and that the two guns were in the bathroom trash can. The guns were covered by nothing but several pieces of scrap paper. The officers secured the hotel room and stood guard until the weapons could be photographed and retrieved by a member of the Identification Bureau. No other search of the room was conducted by any of the officers at that time. Following the recovery of the weapons, Officer Petinga returned to the lobby to await Booker's return. Sergeant Mark Pincus set up surveillance in Room 308, directly across the hall from the target room. While awaiting Booker's return, Sergeant Pincus ran a criminal history on Booker

4

revealing that Booker had prior violent arrests and at least one conviction.

At approximately 7:30 p.m., Detective Andrews, who had relieved Officer Petinga and was stationed at the front desk, notified Sergeant Pincus that Booker and a female companion had entered the hotel lobby. Sergeant Pincus, having seen the photograph of Booker from the hotel registry, was able to identify Booker outside of Room 309 through the peep hole of Room 308.

Sergeant Pincus and his partner entered the hall with guns drawn, advised Booker that he was under arrest, and ordered him to get down on his knees with his hands in the air. Booker asked Sergeant Pincus the reason for the arrest and Sergeant Pincus replied that the officers had found something in Booker's hotel room, to which Booker responded, "guns." Sergeant Pincus handcuffed and searched Booker and retrieved the jacket that Booker was attempting to kneel on. A search of Booker's jacket revealed two packages containing a total of approximately 149 grams of crack cocaine. After being placed under arrest, Booker consented to a search of Room 309.

On January 19, 2005, Booker was indicted on charges of: (1) conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Following suppression hearings on July 20 and 21, 2005, and oral argument on August 11, 2005, the District Court issued an

opinion and order on September 9, 2005, finding no grounds to suppress the guns, drugs, or statement.[1] On February 1, 2006, a jury convicted Booker on Counts two and three of the indictment. On August 4, 2006, the District Court sentenced Booker to a total of 25 years' imprisonment, 10 years of supervised release, a $2,000 fine, and a $200 special assessment.

On appeal, Booker argues that the firearms, drugs, and statement were obtained in violation of his Fourth Amendment right to be free from unreasonable searches and seizures and should have been suppressed as fruits of an unlawful search.

## Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291 (2000). We review the District Court's factual findings for clear error and exercise plenary review over application of the law to facts. United States v. Naranjo, 426 F.3d 221, 226 (3d Cir. 2005) (citing United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002)).

## Discussion

The central issue in this case is whether probable cause existed to arrest Booker. Because the police were given sufficiently reliable information from the hotel management regarding the presence of firearms in Booker's room, the legality of the

---

[1] Booker made several post-arrest statements which he separately moved to suppress on Fifth and Sixth Amendment grounds. Booker is not challenging on appeal the admission of any of these post-arrest statements.

6

initial search for the firearms is not determinative of the issue of probable cause.[2]  The

inquiry rather is whether the totality of the facts available to the arresting officers at the

time justified a finding of probable cause sufficient to arrest Booker.  For the reasons

stated below, we find that there was probable cause to arrest Booker and we affirm.

The Fourth Amendment provides, in relevant part: "The right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures, shall not be violated . . . ."  U.S. Const. amend. IV.  "[A] warrantless arrest by a

law officer is reasonable under the Fourth Amendment where there is probable cause to

believe that a criminal offense has been or is being committed."  Devenpeck v. Alford,

543 U.S. 146, 152 (2004).  Because determining whether "probable cause exists for a

warrantless arrest is fundamentally a factual analysis that must be performed by the

officers at the scene," it is the court's duty to "determine whether the objective facts

available to the officers at the time of arrest were sufficient to justify a reasonable belief

that an offense was being committed."  United States v. Glasser, 750 F.2d 1197, 1206 (3d

Cir. 1984).

The government urges that sufficient probable cause existed to arrest Booker,

based on the officers' knowledge that: (1) Booker was the registered occupant of a room

---

[2] Of course, reams of briefs could have been avoided if the officer had obtained a search warrant, as there clearly was probable cause to obtain one.  We need not decide whether the original warrantless search met the requirements of the Fourth Amendment in light of our decision that there was subsequently probable cause to arrest.

7

in which two firearms were kept; (2) there was an outstanding warrant for Booker's arrest; and (3) Booker had a criminal history of multiple arrests, including violent offenses, and a conviction. The government also argues that, pursuant to New Jersey statutes, N.J.S.A. §§ 2C:39-2(b) and 2C:39-5, there is a presumption that possession of a gun in New Jersey is unlawful, and that regardless, due to Booker's conviction, Booker could not carry or possess a firearm in New Jersey.

Booker maintains that his warrantless arrest was not supported by probable cause because there is insufficient evidence that the arresting officers had enough information regarding Booker's criminal history. Booker contends that the record is unclear as to what information Officer Petinga actually conveyed to the arresting officers regarding Booker's outstanding warrant and criminal history. Booker further argues that the testimony regarding arresting officer Sergeant Pincus' knowledge as to what type of conviction Booker had is vague and ambiguous.

As the District Court correctly noted, even if the guns themselves were inadmissible, the officers had reliable information concerning the presence of the guns themselves in the hotel room. United States v. Booker, No. 05-313, 2005 WL 2217023, at *6 n.10 (D.N.J. Sept. 9, 2005). The mere possession of a firearm, however, does not by itself satisfy the requisite probable cause to arrest if it is unknown whether such possession violates the law. See United States v. Ubiles, 224 F.3d 213, 217–218 (3d Cir. 2000) (finding that "[i]t is not necessarily a crime to possess a firearm in the Virgin

8

Islands," nor does the "mere allegation that a suspect possesses a firearm . . . justify an officer in stopping a suspect absent the reasonable suspicion required by Terry"); see also United States v. Meyers, 308 F.3d 251, 263 (3d Cir. 2002) ("[T]he mere fact of possessing a gun inside a residence can not supply probable cause to arrest.").

When evaluating whether probable cause existed to arrest Booker, the District Court relied heavily on New Jersey criminal code, N.J.S.A. §§ 2C:39-2(b) and 2C:39-5, which presumes that possession of a handgun is unlawful. Under New Jersey law, there are "strict permit requirements and a rigid investigation and approval process that buttress the statutory presumption." United States v. Valentine, 232 F.3d 350, 357 (3d Cir. 2000). It is these requirements, included in N.J.S.A. §§ 2C:58-4(c) and 2C:58-3(c)(1), which we find provide a compelling basis for a probable cause determination, irrespective of any presumption. Specifically, under §§ 2C:58-4(c) and 2C:58-3(c)(1), a handgun permit cannot be obtained by "any person who has been convicted of any crime." N.J.S.A. § 2C:58-3(c)(1); see also In re Preis, 573 A.2d 148, 151 (N.J. 1990) (noting that a handgun permit will only be issued when, among other requirements, the person is "not subject to any of the disabilities set forth in section 2C:58-3c [such as those for one who has been convicted of a crime . . . ]").

A detailed review of the record reveals that, under the totality of the circumstances, the arresting officers possessed probable cause to arrest Booker based on their knowledge of Booker's criminal background and possession of firearms. (See, e.g.,

9

Appellant's App. 95, 100–102, 123–124.) Officer Petinga testified that he stopped Booker two days prior to his arrest, obtained his name and information regarding a pending case in Atlantic City, and learned that Booker had been in the Atlantic City jail before. (Id. at 36–37.) Sergeant Pincus confirmed that this information was conveyed to him before he requested that another officer conduct a criminal history check of Booker. (Id. at 112.) Most importantly, Sergeant Pincus recalled learning from the background check that Booker had several violent arrests and a conviction, although he could not recall when testifying whether he ever learned what the criminal conviction was for. (Id. at 101–102.) Sergeant Pincus further testified that, under New Jersey law, a person with a criminal record cannot obtain a permit to carry a handgun.[3] (Id. at 121.)

Although the record gives no indication of whether Officer Petinga conveyed the information regarding Booker's outstanding warrant to Sergeant Pincus or the other

---

[3] N.J.S.A. § 2C:1-4 defines a "crime" as an offense "for which a sentence of imprisonment in excess of 6 months is authorized." N.J.S.A. § 2C:1-4(a). By contrast, offenses for which the maximum sentence of imprisonment authorized is less than six months are known as "disorderly persons offense[s]" and do "not give rise to any disability or legal disadvantage based on conviction of a crime." N.J.S.A. § 2C:1-4(b). Although Sergeant Pincus did not recall the specifics of Booker's criminal history, he testified that, based on his knowledge, "they don't put convictions of, as you referred to it, misdemeanors on a criminal record, which [sic] it's always felonies." (Appellant's App. 124.) He further stated that "the only time I've ever seen a printout of someone's criminal history it would only mention the convictions for felonies." (Id.) Thus, we can infer that Sergeant Pincus believed, at the time of the arrest, as in fact was actually the case, that Booker's conviction was for a crime as defined by N.J.S.A. § 2C:1-4(a) rather than an offense that is not a "crime" under New Jersey law. Booker had been convicted of manufacture and delivery of a controlled dangerous substance and possession of a controlled dangerous substance.

arresting officers, this does not change the fact that Sergeant Pincus had reliable information indicating that Booker possessed firearms without a permit. Taken together, these facts demonstrate that the officers had enough information at the time of arrest indicating that Booker did not possess permits for the firearms in his possession and that his possession of the firearms therefore violated the law. Such information was sufficient to establish probable cause for the arrest.

Accordingly, because probable cause existed for Booker's arrest, the statement made and the drugs seized in the search incident to the arrest were properly admitted. In addition, because the guns would inevitably have been retrieved from the hotel room when the area was secured after the arrest, the guns were also correctly admitted.[4] It is therefore unnecessary to address Booker's remaining claims as to his standing to contest the warrantless search of his hotel room or, in the alternative, whether exigent circumstances existed to justify the warrantless search.

---

[4] Apparently, subsequent to the arrest, Booker also consented to a search of the hotel room. As the arrest was valid, any search subsequent to the consent would also be valid.

## Conclusion

For the foregoing reasons, we conclude there was probable cause to arrest and therefore affirm the judgment of the District Court.