573 A.2d 148

IN RE THE APPLICATIONS FOR GUN PERMITS OF DREW E. PREIS AND GARY R. CLINE.

Argued January 29, 1990—Decided May 8, 1990.

*Jack L. Weinberg*, Special Deputy Attorney General, Acting Assistant Prosecutor, Chief, Appellate Section, argued the cause for appellant, State of New Jersey (*James F. Mulvihill*, Special Assistant Attorney General In Charge, Acting Camden County Prosecutor, attorney).

*Ronald J. Cappuccio,* argued the cause for respondents, Drew E. Preis and Gary R. Cline.

*Frederick P. DeVesa,* Assistant Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Robert J. Del Tufo,* Attorney General, attorney; *Frederick P. DeVesa* and *J. Grall Robinson,* Deputy Attorney General, on the briefs).

The opinion of the Court was delivered by

O'HERN, J.

The question in this case is whether employees of a private-security agency have a preferred right by virtue of their status to obtain a permit to carry a gun. We find no such preference in the legislation. We therefore concur with the Law Division's view that the statutory standard calls for a permit to be issued only to those who can establish an urgent necessity for protection of self or others—as for example, in the case of one whose life is in danger as evidenced by serious threats or earlier attacks. We reverse the judgment of the Appellate Division, which directed the issuance of permits to the employees because the private-security agency had been earlier requested to furnish armed security to a shipping concern that had assertedly been the subject of union-related violence.

I

For purposes of this appeal we draw on the statement of facts furnished by the applicants for the gun permits. Drew Preis and Gary Cline are residents and former police officers of Merchantville, New Jersey. Cline, a retired police chief, is employed by Frischling Research Associates (Frischling) and Associated Security Specialists, two related private-detective agencies licensed in New Jersey. Preis is employed by Frischling. In part, Frischling provides executive and property protection. The applicants assert that their employment requires that they have a permit to carry a handgun. No other Frischling

employees are licensed to carry a handgun. Frischling had been requested to provide security service for McAllister Corporation, a tugboat company that was involved in a labor dispute. During the period of dispute, an unknown person shot out a tugboat window. The tugboat company requested armed security personnel.

Mr. Preis and Mr. Cline sought to obtain gun permits based on the company's desire to provide armed protection to executives and property. In accordance with the gun-licensing law, they first cleared their applications through the Merchantville Chief of Police, who gave favorable recommendations for both men. Evidence submitted to the trial court indicated that other security-guard companies have armed guards available.

At the close of the initial hearing, the Law Division indicated that it was inclined to grant a permit to Cline, stating that "[h]e needs a gun for [the] McAllister [job]. I'm willing to give him the gun for the McAllister job," subject to receipt of a letter from the McAllister Corporation. The court did not consider Preis' application at that hearing. On the renewed hearing date, Preis and Richard Frischling, the president of the security agency, produced the required letter from McAllister. The prosecutor concurred in the request for the handgun permits, but suggested that they be limited to the job for which sought. The court refused to grant the limited permit, ruling that it was drawing the line for future applications. Furthermore, the court said, "I am going to have applications for every [ser]vice and detective in the State of New Jersey to carry a gun and I won't grant it and I won't grant any of them until the Appellate Division tells me to grant them."

The court based its denial on several grounds. First, it stated that it was not clear whether a gun had ever been fired at the client, and concluded that there was "no evidence of any great need of armed guards on that strike." On a more philosophical basis, it reasoned that it could not justify the fact that an individual has a right to hire a gun just because he or she

happens to be "an important person or executive." The court, declaring that the applicants had failed to show an "urgent need for armed detectives here in this business," accordingly denied their requests for handgun permits.

The Appellate Division reviewed the threats to the client, McAllister, with a particular emphasis on the potential dangers to the tugboat pilot. In an unpublished opinion, the court found that such circumstances established justifiable need for both applicants under *N.J.S.A.* 2C:58–4d. It ordered that both be granted generalized permits to carry handguns, concluding that "a potential client with an immediate need for protection might be without that needed protection if private professional services are unavailable." However, the court directed the Law Division to impose such restrictions as would define the circumstances in which the guns might be carried. In effect, by allowing the court to impose such restrictions on these permits, the Appellate Division ordered the Law Division to issue permits for future permission to carry when the applicant deemed it necessary to provide armed protection.

We granted the State's petition, 114 *N.J.* 499, 555 *A.*2d 619 (1989), and permitted the Attorney General to file an *amicus* brief in the case.

## II

### A.

We have repeatedly referred to New Jersey's gun-control laws as a "careful grid" of regulatory provisions. *State v. Ingram*, 98 *N.J.* 489, 495 n. 1, 488 *A.*2d 545 (1985). Our laws draw careful lines between permission to possess a gun in one's home or place of business, *N.J.S.A.* 2C:39–6e, and permission to carry a gun, *N.J.S.A.* 2C:39–6a and *N.J.S.A.* 2C:39–6c. The permit to carry a gun is the most closely-regulated aspect of gun-control laws. Conversely, carrying a gun is the most heavily penalized conduct when certain crimes are committed

with a gun.  *State v. Des Marets*, 92 *N.J.* 62, 455 *A.*2d 1074 (1983).  The message is clear: if you carry a gun while committing a crime, you *will* go to prison.  *N.J.S.A.* 2C:43–6c.

Very few persons are exempt from the criminal provisions for carrying a gun without a permit.  Members of the armed forces of the United States or National Guard, federal-law-enforcement officers, State Police, sheriff's officers, correction officers, or *regular* members of municipal and county police forces have authority to carry guns both on and off duty.  *N.J.S.A.* 2C:39–6a.  Other designated occupations, such as bank guards, railway policemen, park rangers, and campus-police officers, are exempt from the gun-control act's criminal provisions "while in the actual performance of [such] duties."  *N.J. S.A.* 2C:39–6c.  All members exempt under *N.J.S.A.* 2C:39–6a and *N.J.S.A.* 2C:39–6c from the criminal provisions of *N.J.S.A.* 2C:39–5 must qualify *annually* in the use of a revolver under *N.J.S.A.* 2C:39–6j.  Private-security officers, not being exempt from our gun-control laws, must obtain a license to carry a gun.

The licensing provisions are contained in another section of the Code, *N.J.S.A.* 2C:58–4.  Only employees of armored-car companies are singled out for special treatment.  *See N.J.S.A.* 2C:58–4.1.  So concerned is the Legislature about this licensing process that it allows only a Superior Court judge to issue a permit, after applicants first obtain approval from their local chief of police.  In this (as perhaps in the case of election laws) the Legislature has reposed what is essentially an executive function in the judicial branch.  We have acceded to that legislative delegation because "[t]he New Jersey Legislature has long been aware of the dangers inherent in the carrying of handguns and the urgent necessity of their regulation," although we "might well have declined the designation" because the "functions * * * were clearly non-judicial in nature."  *Siccardi v. State*, 59 *N.J.* 545, 553, 284 *A.*2d 533 (1971).  *N.J.S.A.* 2C:58–4d lists the grounds for issuance of a permit:

The court shall issue the permit to the applicant if, but only if, it is satisfied [1] that the applicant is a person of good character who is not subject to any of the

disabilities set forth in section 2C:58–3c [such as those for one who has been convicted of a crime or is drug dependent], [2] that [the applicant] is thoroughly familiar with the safe handling and use of handguns, and [3] that [the applicant] has a justifiable need to carry a handgun.

In addition, the provision allows the court, in its discretion, to issue a "limited type permit which would restrict the applicant as to the types of handguns he may carry and where and for what purposes such handguns may be carried." *Ibid.*

Each of the three factors is critical. The Attorney General emphasizes in his *amicus* brief that none should be presumed to be present, noting that even a retired police officer should not necessarily be regarded as currently familiar with the safe handling and use of handguns. Obviously, the critical question here is, "What is justifiable need?"

### B.

At the time of the reenactment of the gun-licensing provisions as part of the Code of Criminal Justice of 1979, *N.J.S.A.* 2C:58–1 to –11, the most relevant definition of "justifiable need" was set forth in *Siccardi v. State, supra,* 59 *N.J.* 545, 284 *A.*2d 533. In that case, Justice Jacobs reviewed the history of our gun-control laws in the context of an application by the night manager of a theater in Plainfield to carry a gun. The manager was required to carry money in the late evening hours from the theater to a nearby bank. In support of his application, he recited numerous incidents involving beatings and robberies in the area of the theater, and claimed that his life had been threatened by persons confronting him in the theater and on the street. The Chief of Police denied the manager's application for a permit. That was followed, after a hearing, by the County Court's denial of the application as well. On appeal, the Supreme Court found that the threats recited by the applicant were not sufficiently concrete to warrant the issuance of a permit. In concluding that "determinations of need be limited to police officers and security guards, small businesses in high crime areas, and others with a special need for self-protection,"

*id.* at 552, 284 *A*.2d 533 (quoting *Final Report, National Commission on the Causes and Prevention of Violence* 181 (1969)), the Court also took notice of an internal policy of Assignment Judges,

> which wisely confines the issuance of carrying permits to persons specifically employed in security work and to such other limited personnel who can establish an urgent necessity for carrying guns for self-protection. One whose life is in real danger, as evidenced by serious threats or earlier attacks, may perhaps qualify within the latter category but one whose concern is with the safety of his property, protectible by other means, clearly may not so qualify. [*Id.* at 557, 284 *A*.2d 533.]

The question in this case is whether the policy stated in *Siccardi* in favor of issuing permits to persons employed in security work justifies the generalized issuance of a permit without demonstrable need to carry guns for self-protection from dangers either to self or to others.

### C.

■ With but one qualification, which turns out to be critical to the disposition of this case, we agree with the position of the Attorney General as set forth in his *amicus* brief. Both the Attorney General and the State, through the Camden County Prosecutor, argue that we should not depart from the core substantive standard of *Siccardi* for determining when a permit to carry should be issued to a private citizen. Under the *Siccardi* rule there must be "an urgent necessity * * * for self-protection." 59 *N.J.* at 557, 284 *A*.2d 533. The requirement is of specific threats or previous attacks demonstrating a special danger to the applicant's life that cannot be avoided by other means. *Ibid.; Reilly v. State,* 59 *N.J.* 559, 562, 284 *A*.2d 541 (1971); *In re Application of X,* 59 *N.J.* 533, 534–35, 284 *A*.2d 530 (1971). Generalized fears for personal safety are inadequate, and a need to protect property alone does not suffice. *Siccardi, supra,* 59 *N.J.* at 557–58, 284 *A*.2d 533.

■ However, the Attorney General believes that it is proper to adapt the *Siccardi* rule to cases in which applicants are

employees of licensed private-detective agencies. Employees of licensed agencies are authorized to protect persons or property pursuant to the Private Detective Act. *N.J.S.A.* 45:19–8 to –27. He points out that unlike other private citizens who seek permits, employees of licensed agencies provide protective services under a regulatory scheme that the Legislature has adopted to insure competent protection for citizens who seek it. He thus concludes that "the Legislature has recognized a need for private security services, and this express legislative policy judgment must be considered in determining whether an employee of a licensed agency has demonstrated 'justifiable need' to carry a handgun." On the other hand, the Attorney General recognizes that status as an employee of a licensed agency, without more, is insufficient to establish justifiable need—this by virtue of the fact that the Legislature specifically rejected that approach when it required private detectives to procure permits in order to carry handguns. *See L.* 1963, *c.* 174. It is also clear, the Attorney General argues, that "a permit should not issue to an employee of a licensed agency who merely demonstrates a need to protect property alone." The Attorney General thus argues, and we agree, that the Appellate Division decision could be construed to authorize the issuance of permits to carry handguns while protecting property, which we believe would not qualify as "justifiable need." The Attorney General concludes that the standard of "justifiable need" requires an applicant-employee of a security agency to demonstrate that he performs statutorily-authorized duties under circumstances that present a substantial threat of serious bodily harm, and that carrying a handgun is necessary to reduce the threat of unjustifiable serious bodily harm to any person. We agree that this is the correct exposition of the substantive standard.

We are unable to agree, however, with the suggestion of the Attorney General that courts should issue permits to private-security-agency employees to carry guns when, in the judgment of the employee or the agency, an urgent necessity for protec-

tion of the person is present. The Attorney General is candid to recognize:

The difficult question raised by this case is the form of the permit that should issue if these applicants can demonstrate justifiable need. If they otherwise satisfy all statutory criteria, Preis and Cline could be issued specific permits limiting their authority to provide personal armed protective services to this tugboat pilot for the duration of his danger or, they could be issued more generalized permits limiting their authority to carry handguns to protecting this client and others under similar circumstances.

This, the Attorney General concludes, is an acceptable balancing of the substantial risks of the public interest in providing statutorily-authorized protection to clients and the legislative goal of avoidance of the substantial risk of injury of using guns to protect property.

We disagree, because we believe that the approach would largely neutralize the effect of the statutory amendment, in which the Legislature specifically deleted the authorization for "any member of a legally organized detective agency" to carry a concealed weapon. *L.* 1963, *c.* 174. Private-security agencies are governed by the Private Detective Act of 1939 because the term "private detective business" means: "[T]he business of conducting a private detective agency * * *. * * * * Also it shall mean the furnishing for hire or reward of watchmen or guards or private patrolmen or other persons to protect property, either real or personal, or for any other purpose whatsoever." *N.J.S.A.* 45:19–9(a).

Most jurisdictions that have dealt with the issue have approached the question as one of statutory authority. *See People v. Francis,* 52 *Ill.App.*3d 978, 10 *Ill.Dec.* 820, 368 *N.E.*2d 415 (1977) (defendant was able to qualify himself within exemption for security guards from statute prohibiting possession of loaded firearm within city), *modified,* 73 *Ill.*2d 184, 22 *Ill.Dec.* 685, 383 *N.E.*2d 161 (1978); *Ruggiero v. Police Comm'r of Boston,* 18 *Mass.App.* 256, 464 *N.E.*2d 104 (Statute delineating circumstances under which police commissioner may issue license to carry firearm must be interpreted according to intent of legislature. The permit was authorized for "protection of

life and property, conditional with his employment as a security guard."), *review denied*, 392 *Mass.* 1104, 466 *N.E.*2d 522 (1984); *In re Application of Hoffman*, 430 *N.W.*2d 210 (Minn.Ct.App. 1988) (Minnesota's law authorizes handgun permit without a showing of personal safety hazard when handgun required by occupation as security guard); *Commonwealth v. Walton*, 365 *Pa.Super.* 147, 529 *A.*2d 15 (1987) (taxi driver sought to bring himself within exemption from licensing requirements for employees of common carriers whose duties require them to protect money), *appeal denied*, 517 *Pa.* 630, 539 *A.*2d 811 (1988).

This issue of the authority of private-security guards to carry weapons has generated considerable interest. For example, in Texas a statutory provision was challenged that exempted regular full-time peace officers, but not reserve peace officers, from the requirement of obtaining a private-security-officer commission before carrying a handgun while employed as a private-security officer. *Texas Bd. of Private Investigators v. Bexar County Sheriff's Reserve*, 589 *S.W.*2d 135 (Tex.Civ.App. 1979). And, by one of those bitter twists of irony, Arthur Bremer, who shot Governor Wallace with an unlicensed handgun, claimed that the Maryland statute regulating handguns was unconstitutional because a provision that repealed authorization for the issuance of permits to private detectives could not have been embraced in the same act with a provision for a mandatory-minimum sentence for the gun offense. *Bremer v. State*, 18 *Md.App.* 291, 307 *A.*2d 503 (1973), *cert. denied*, 415 *U.S.* 930, 94 *S.Ct.* 1440, 39 *L.Ed.*2d 488 (1974).

In short, the subject of gun control is a comprehensive one that is almost invariably resolved on the basis of legislative intention. Especially because of the views of the Attorney General, we are simply unable to perceive in the legislative intention any preference that private-security guards be routinely or regularly authorized to carry weapons.

We would not say that a permit could not be issued to security agents in particular cases or situations, but we cannot agree that the Legislature would intend that authorization to be self-executing. That would make the private-security agency a judge of its own permits.

## III

■ Although the remaining issues are not squarely presented in this case, they are of sufficient importance for us to discuss them. The Attorney General urges that the licensing decision requires a careful analysis of each of the three prongs of the statutory standard. For example, status as a former police officer does not satisfy the requirement of being thoroughly familiar with the handling of guns. That is because even current police officers, along with others exempt under *N.J.S.A.* 2C:39–6a and *N.J.S.A.* 2C:39–6c from the license requirements, are required to qualify annually in the use of a revolver or similar weapon under *N.J.S.A.* 2C:39–6j. Cline retired from the police force in January 1985, before that provision went into effect. See *L.* 1985, *c.* 324. In addition, Preis submitted qualification scores that were over two years old. Inasmuch as every gun permit must be renewed every two years, *N.J.S.A.* 2C:58–4(a), thorough familiarity with guns must be demonstrated every two years as well. Nor, indeed, can good character or physical fitness be presumed, merely because the applicant is a former policeman, without subjecting the applicant to the two-year-renewal review.

Next, we address the problem raised at oral argument that security agencies whose employees already possess permits to carry handguns, perhaps issued under looser standards, would have a monopoly on the business of providing armed security. However, as noted, each permit to carry a handgun is renewable on a two-year basis. We would expect that unless other legislative direction is received, the holders of such permits will be required to requalify every two years in accordance with

uniform standards. The application of uniform statewide standards to the requalification process will eliminate any monopoly held by existing licensees.

Finally, the argument is made that off-duty police officers, then, will be the only persons employed by private-security agencies, inasmuch as they are authorized to carry guns. We are certain that this can be readily handled by the Attorney General's office through its regulatory authority. The Attorney General has furnished an opinion that regular members of a municipal police department, during their off-duty hours, may engage in police-related activities for private commercial establishments as employees without being in violation of the Private Detective Act, as long as those activities do not constitute the business of a private detective, security guard, or watchman. *Formal Opinion* 1978—No. 11, *cited in In re Rawls,* 197 *N.J.Super.* 78, 88, 484 *A.*2d 53 (Law Div.1984). And, as noted, special policeman may not carry weapons when off duty. *N.J. S.A.* 2C:39–6a(7); *Belmar Policemen's Benevolent Ass'n v. Belmar,* 89 *N.J.* 255, 263, 445 *A.*2d 1133 (1982); *Rawls, supra,* 197 *N.J.Super.* at 87, 484 *A.*2d 53.

IV

To sum up, the Legislature has designated the judiciary as the issuing authority for gun permits. The Legislature has not expressed a preference that employees of private-detective agencies or private-security agencies should have a blanket authorization to carry guns. Given the dangers inherent in carrying handguns and the urgent necessity for their regulation, as evidenced by the selection of the judiciary as legislative agent, we do not consider it within the legislative intent to delegate that authority to private-security companies or private-detective agencies. The Law Division will remain open to consider whether applicants establish "justifiable need" to carry handguns on a case-by-case basis. Before granting such a permit, the court must determine (1) that the applicant, in the

course of performing statutorily-authorized duties, is subject to a substantial threat of serious bodily harm; and (2) that carrying a handgun is necessary to reduce the threat of unjustifiable serious bodily harm to any person.

The judgment of the Appellate Division is reversed, and the judgment of the Law Division is reinstated.

*For reversal and reinstatement*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.

*Opposed*—None.