SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

## In re Application for Permit to Carry a Handgun of Calvin Carlstrom
### (A-63-18) (081981)

**Argued October 24, 2019 -- Decided January 28, 2020**

**FERNANDEZ-VINA, J., writing for the Court.**

The Court considers whether an applicant for a handgun carry-permit is entitled to a hearing if the Law Division denies an application that was approved by the police chief or superintendent.

In June 2016, petitioner Calvin Carlstrom applied for a permit to carry a handgun, in his capacity as a security guard for AMC Movie Theaters, to the Roselle Park Police Department. His application included three endorsements to his good character and behavior, certificates indicating the completion of several firearms training and safety courses, the employment application for his security guard position, and a certified letter of need from the director of operations at Global Security Services.

In October 2016, the Roselle Park Police Chief approved Carlstrom's application. Carlstrom then presented his application to the Law Division. On February 2, 2017, the judge issued an order denying his application without a hearing. The judge determined that Carlstrom failed to demonstrate that he has "a justifiable need to carry a handgun." Carlstrom appealed, and the Appellate Division affirmed, finding no support in the relevant statutes for Carlstrom's argument that he was entitled to a hearing.

Carlstrom petitioned this Court for certification, which was granted on March 21, 2019. 237 N.J. 186 (2019). On May 6, 2019, the Court issued a corrected order, which provided "that the petition for certification is granted, limited to the issue of whether applicant was entitled to a hearing in the Superior Court on his application for a permit to carry a handgun." ___ N.J. ___ (2019).

Two weeks after the corrected order was issued, the Administrative Office of the Courts (AOC) promulgated Administrative Directive #06-19: Criminal – Procedures for Processing Gun Permits, which provides in relevant part: "[I]f a court has any questions regarding the applicant or his or her permit to carry application, it must hold a hearing to address those questions. The court should not simply deny the application."

1

**HELD:** The Directive, issued pursuant to the Court's administrative rulemaking authority, requires a hearing and is controlling on this issue. The Court remands this matter to the Law Division to conduct a hearing on Carlstrom's application for a carry-permit and provides guidance as to the scope of that hearing.

1. An applicant can obtain a permit to carry a handgun in New Jersey through the two-step process provided by N.J.S.A. 2C:58-4. The applicant must first apply "to the chief police officer of the municipality in which the applicant resides, or to the superintendent," N.J.S.A. 2C:58-4(c), and then, if approved, "the applicant shall forthwith present it to the Superior Court," N.J.S.A. 2C:58-4(d). The application itself is subject to many requirements, which the Court reviews. If the application is approved by the police chief or superintendent, the applicant then presents the application "to the Superior Court of the county in which the applicant resides," N.J.S.A. 2C:58-4(d). If, however, the police chief or superintendent denies the application, the applicant "may request a hearing in the Superior Court." N.J.S.A. 2C:58-4(e). Despite its overarching specificity, the statute is silent as to whether the applicant is entitled to a hearing when the Law Division denies an application that was previously granted by the police chief or superintendent. (pp. 9-12)

2. The Directive acknowledged that statutory silence but recognized that courts in "a majority of counties" chose to hold "a hearing if [they] had questions or concerns about the applicant or the application." The Directive approved that practice and made it a requirement. The Directive's mandate, quoted above, means that a hearing must be held <u>whenever</u> the court contemplates denying a handgun carry-permit that has been approved by the police chief or superintendent. That mandate is controlling in this case. Because no such hearing was held here, the Court remands to the Law Division. (pp. 12-13)

3. The Court sets forth notice and timeframe requirements for hearings. At the hearing, the applicant should be afforded the opportunity to proffer reasons why he satisfies the standard and respond to any questions from the judge. Amendments to the application as well as other evidence not included in the application may be admitted at the judge's discretion, such as evidence pertinent to credibility or key factual issues. If the applicant conducted informal discussions regarding his application with the police chief or superintendent, the content of those discussions may be presented to the judge as may any written conclusions by the reviewing chief or superintendent. The applicant may request to call the chief or superintendent, at the judge's discretion, if the applicant demonstrates a basis for the testimony. Testimony by individuals such as the applicant and his or her employer may be taken at the hearing at the judge's discretion. (pp. 13-14)

**The matter is REMANDED to the Law Division for a hearing.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion.**

2

In re Application for Permit to
Carry a Handgun of Calvin Carlstrom

On certification to the Superior Court, Appellate
Division.

| Argued | Decided |
|---|---|
| October 24, 2019 | January 28, 2020 |

Louis P. Nappen argued the cause for appellant Calvin
Carlstrom (Evan F. Nappen Attorney at Law, attorneys;
Louis P. Nappen, on the brief).

Milton S. Leibowitz, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued the cause for
respondent State of New Jersey (Lyndsay V. Ruotolo,
Acting Union County Prosecutor, attorney; Milton S.
Leibowitz, of counsel and on the briefs).

Kayla E. Rowe, Deputy Attorney General, argued the
cause for amicus curiae Attorney General of New Jersey
(Gurbir S. Grewal, Attorney General, attorney; Kayla E.
Rowe, of counsel and on the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

Under the statutes that govern the issuance of handgun carry-permits in

New Jersey, an applicant must satisfy a two-step process. First, the applicant

must submit his or her application "to the chief police officer of the

municipality in which the applicant resides, or to the superintendent."
N.J.S.A. 2C:58-4(c). If the police chief or superintendent approves the application, the applicant must then send his or her application to the Superior Court, Law Division, and a Law Division judge decides whether to issue the permit. N.J.S.A. 2C:58-4(d).

The statute expressly provides that if the police chief or superintendent denies the application, the applicant may request a hearing in the Law Division. N.J.S.A. 2C:58-4(e). The statute is silent, however, about whether the applicant is entitled to a hearing if the Law Division denies an application that was approved by the police chief or superintendent.

That was the setting of this case. The Roselle Park Police Department approved petitioner Calvin Carlstrom's application to carry a handgun in his capacity as a security guard for AMC Movie Theaters, but the Superior Court, Law Division then denied his application without a hearing. The Appellate Division affirmed the denial, and we granted certification to determine whether Carlstrom was entitled to a hearing in the Law Division and, if so, the extent and parameters of the hearing and pre-hearing procedures.

Shortly after we granted certification in this matter, the Administrative Office of the Courts (AOC) promulgated Administrative Directive #06-19: Criminal – Procedures for Processing Gun Permits (May 20, 2019),

https://njcourts.gov/notices/2019/n190521f.pdf (the Directive). The Directive noted the statutory silence concerning whether a hearing should be held when a court denies a permit that had been approved by law enforcement and instructed that "if a court has any questions regarding the applicant or his or her permit to carry application, it must hold a hearing to address those questions. The court should not simply deny the application." Id. at 3.

The Directive was issued pursuant to this Court's administrative rulemaking authority, see N.J. Const. art. VI § 2, ¶ 3, and is therefore controlling on this issue. We remand this matter to the Law Division to conduct a hearing on Carlstrom's application for a carry-permit, and we provide guidance as to the scope of that hearing.

## I.

### A.

In June 2016, petitioner Calvin Carlstrom applied for a permit to carry a handgun to the Roselle Park Police Department, pursuant to N.J.S.A. 2C:58-4(c). In his application, he listed his occupation as a security guard for Global Security Services. The application further included three endorsements to his good character and behavior, certificates indicating the completion of several firearms training and safety courses, the employment application for his

security guard position, and a certified letter of need from the director of operations at Global Security Services, which stated:

> Mr. Carlstrom was hired by our company as an Armed Security Officer and is required by contract to carry a firearm in the performance of his duties.
>
> Mr. Carlstrom will be performing his duties at AMC movie theatres in New Jersey. His duties include the protection of life, as well as cash transfers in the theatres. Large amounts of cash are moved across common areas of the theatres requiring an armed escort. Additionally, movie theatres have been included in Homeland Security documents and press releases as "soft targets" for terrorism and have been in the news on several occasions recently for episodes of firearms-related violence, necessitating an armed presence.

## B.

### 1.

In October 2016, the Roselle Park Police Chief approved Carlstrom's application. See N.J.S.A. 2C:58-4(c) to (d). Carlstrom then presented his application to the Law Division. N.J.S.A. 2C:58-4(d). On February 2, 2017, the judge issued an order denying his application without a hearing.

In his accompanying statement of reasons, the judge noted that N.J.S.A. 2C:58-4(d) requires a carry-permit applicant to demonstrate that he has "a justifiable need to carry a handgun." The judge stated that in In re Preis, 118 N.J. 564 (1990), this Court "rejected the notion that employees of private security firms have a 'preferred right' to a permit to carry because of their

4

work-related status."  The judge added that "the statutory standard calls for a permit to be issued only to those who can establish an urgent necessity for protection of self or others."  (quoting In re Preis, 118 N.J. at 566).  Applying that standard to this case, the judge determined that

> no specific serious threats or previous attacks were cited to by the applicant in his letter of need . . . . Applicant failed to establish that he, in the course of his described employment, will be subjected to a substantial threat of serious bodily harm and that carrying a handgun is necessary to reduce the threat of unjustifiable serious bodily harm to any person.
>
> In short, the applicant has failed to meet the rather stringent requirements under our case law . . . .

2.

Carlstrom appealed.  In an unpublished decision, the Appellate Division affirmed "based on the sound reasons set forth in the [trial judge's] statement of reasons."

As to the issue central in this matter -- whether Carlstrom was entitled to a hearing in the Superior Court, Law Division -- the Appellate Division determined that Carlstrom "cited to no authority to support his argument that a hearing is required in matters involving perfunctory licensing applications or that the court must hear testimony from the Chief who reviewed an application."  The court specifically found no support for such a hearing from the statute:  "[T]he text of N.J.S.A. 2C:58-4 is clear as to when a hearing is

5

required," the court stated, citing N.J.S.A. 2C:58-4(e)'s provision for a hearing upon a denial by the chief police officer or the superintendent. The court added that "[i]f the superintendent or chief police officer approves an application and the Superior Court denies the application and refuses to issue a permit, the applicant may appeal such denial in accordance with law and the rules governing the courts of this State."

Carlstrom petitioned this Court for certification, which we granted on March 21, 2019. 237 N.J. 186 (2019). On May 6, 2019, we issued a corrected order, which provided "that the petition for certification is granted, limited to the issue of whether applicant was entitled to a hearing in the Superior Court on his application for a permit to carry a handgun." ___ N.J. ___ (2019). We also granted amicus curiae status to the Attorney General.

3.

Two weeks after the corrected order was issued, the AOC promulgated the Directive, which sets forth "procedures . . . intended to streamline [the processing of gun permits] and establish uniformity in how the vicinages handle permits to carry a handgun." Administrative Directive #06-19 at 1. The Directive, which was "endorsed by the Conferences of Criminal Presiding Judges and Criminal Division Managers and approved by the Judicial Council," ibid., specifically addresses the central issue in this matter:

6

Although N.J.S.A. 2C:58-4 does not require the court to hold a hearing on a permit to carry application, in a majority of counties the court held a hearing if it had questions or concerns about the applicant or the application. A hearing provides the applicant with an opportunity to clear up any questions or concerns that the court may have. Also, in those counties that seek input from the prosecutor, a hearing will allow the applicant to address the prosecutor's objections. Therefore, <u>if a court has any questions regarding the applicant or his or her permit to carry application, it must hold a hearing to address those questions. The court should not simply deny the application.</u> Further, the hearing must be held no later than 30 days after receipt of the permit to carry application, and the court shall make a determination within 14 days thereafter, absent extraordinary circumstances. This timeframe is sufficient (a) to allow the applicant to expediently address the court's or the prosecutor's concerns and (b) to avoid the delays that can jeopardize the applicant's employment.

[Id. at 3 (emphasis added).]

## II.

## A.

Carlstrom contends he was denied due process when the Law Division failed to provide notice that it was going to deny his application and denied him an opportunity to be heard. Carlstrom asserts that this argument is supported by this Court's statement that an "applicant may have a hearing before the County Judge and review of the County Judge's action may be had

7

in the Appellate Division and, when necessary, in this Court." Siccardi v. State, 59 N.J. 545, 554 (1971).

Carlstrom asserts that the police chief's approval of his application remains unrebutted, and the chief's reasons for approving the application are inappropriately absent from the record. Therefore, Carlstrom contends, testimony from the chief before the trial judge was warranted. In support of this contention, Carlstrom stresses that the chief's duty is to "cause the applicant to be thoroughly investigated." (quoting N.J.A.C. 13:54-2.5). Carlstrom asserts the trial and appellate courts "ignored the duties of the Chief to conduct a thorough investigation, ignored any proofs that the Chief may have as to why he issued the permit, and did not provide the Chief with an opportunity to be heard." Carlstrom therefore asks this Court to remand this matter to the Law Division to provide notice and a hearing on his application for a permit to carry a handgun.

## B.

The State maintains that the decision to hold a hearing should be left to the discretion of the Law Division judge. Applying the language of the Directive, the State contends that if the court has no questions or concerns regarding an application, it is not necessary to hold a hearing. Thus, the State

8

argues that a hearing should not be required in every case, and applicants are afforded due process under the current procedure.

## C.

The Attorney General, appearing as amicus curiae, asks this Court to provide guidance and a formal procedure for the Law Division's review of carry-permit applications, in light of the Directive. The Attorney General suggests that the best course would be for the judge to first determine if an application appears meritorious on its face and, only if the judge makes that determination, to then conduct an evidentiary hearing, so long as the judge has any questions or concerns.

## III.

## A.

An applicant can obtain a permit to carry a handgun in New Jersey through the two-step process provided by N.J.S.A. 2C:58-4. As noted earlier, the applicant must first apply "to the chief police officer of the municipality in which the applicant resides, or to the superintendent," N.J.S.A. 2C:58-4(c), and then, if approved, "the applicant shall forthwith present it to the Superior Court," N.J.S.A. 2C:58-4(d).

The application itself is subject to many requirements. It "shall be signed by the applicant under oath and shall be endorsed by three reputable

9

persons who have known the applicant for at least three years preceding the date of application" and who "shall also certify thereon that the applicant is a person of good moral character and behavior." N.J.A.C. 13:54-2.4(a). The application requires the submission of personal information, N.J.S.A. 2C:58-4(b), and it

> shall be accompanied by a written certification of justifiable need to carry a handgun, which shall be under oath and, in the case of a private citizen, shall specify in detail the urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun.
>
> [N.J.S.A. 2C:58-4(c).]

After investigating the applicant, N.J.A.C. 13:54-2.5, the police chief or superintendent cannot approve the application unless the applicant first "demonstrates that he is not subject to any of the disabilities set forth in [N.J.S.A. 2C:58-3(c)(1) to (10)]," N.J.S.A. 2C:58-4(c); see also N.J.S.A. 2C:58-3(c) ("No person of good character and good repute in the community in which he lives, and who is not subject to any of the disabilities set forth in this section or other sections of this chapter, shall be denied a permit to purchase a handgun or a firearms purchaser identification card, except as hereinafter set forth."). The broadest of the restrictions prohibits the issuance of handgun purchase permits and firearms purchaser identification cards to

10

"any person where the issuance would not be in the interest of the public health, safety or welfare." N.J.S.A. 2C:58-3(c)(5).

In addition to demonstrating that he or she is not subject to one of N.J.S.A. 2C:58-3(c)'s restrictions, the applicant must also demonstrate to the police chief or superintendent "that he is thoroughly familiar with the safe handling and use of handguns." N.J.S.A. 2C:58-4(c); see also N.J.A.C. 13:54-2.4(b), (c) (setting forth the evidence necessary to support that demonstration).

Finally, the applicant must demonstrate to the police chief or superintendent, through a written certification under oath, that he or she "has a justifiable need to carry a handgun." N.J.S.A. 2C:58-4(c). In addition to specifying "the urgent necessity for self-protection," ibid., "[w]here possible, the applicant shall corroborate the existence of any specific threats or previous attacks by reference to reports of such incidents to the appropriate law enforcement agencies," N.J.A.C. 13:54-2.4(d)(1).

If the application is approved by the police chief or superintendent,

> the applicant shall forthwith present it to the Superior Court of the county in which the applicant resides . . . . The court shall issue the permit to the applicant if, but only if, it is satisfied that the applicant is a person of good character who is not subject to any of the disabilities set forth in [N.J.S.A. 2C:58-3(c)], that he is thoroughly familiar with the safe handling and use of handguns, and that he has a justifiable need to carry a handgun in accordance with the provisions of subsection c. of this section.

11

[N.J.S.A. 2C:58-4(d).]

If, however, the police chief or superintendent denies the application, the applicant "may request a hearing in the Superior Court of the county in which he resides," and "[t]he hearing shall be held within 30 days of the filing of the request." N.J.S.A. 2C:58-4(e).

Despite its overarching specificity, the statute is silent as to whether the applicant is entitled to a hearing when the Law Division denies an application that was previously granted by the police chief or superintendent. That is the question at the center of this case.

## B.

The Directive acknowledged the statute's silence with regard to procedures accompanying permit denials by the Law Division but recognized that courts in "a majority of counties" chose to hold "a hearing if [they] had questions or concerns about the applicant or the application." Administrative Directive #06-19 at 3. The Directive approved that practice and made it a requirement. Stressing that "[a] hearing provides the applicant with an opportunity to clear up any questions or concerns that the court may have," the Directive states that "if a court has any questions regarding the applicant or his or her permit to carry application, it must hold a hearing to address those questions. The court should not simply deny the application." Ibid.

12

The Directive was promulgated by the Acting Administrative Director of the Courts at the behest of this Court.  See R. 1:33-3 ("At the direction of the Chief Justice and the Supreme Court, the Administrative Director shall promulgate a compilation of administrative rules and directives relating to case processing, records and management information services, personnel, budgeting and such other matters as the Chief Justice and Supreme Court shall direct.").  The Directive is an expression of this Court's constitutionally granted rule-making authority over all state courts.  See N.J. Const. art. VI, § 2, ¶ 3 ("The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts."); see also In re P.L. 2001, Chapter 362, 186 N.J. 368, 381 (2006) ("The Supreme Court's administrative policies are pronounced through Court opinions, orders, rules, and directives.").

The Directive's mandate means that a hearing must be held whenever the court contemplates denying a handgun carry-permit that has been approved by the police chief or superintendent.  That mandate is controlling in this case. Because no such hearing was held here, we remand to the Law Division.

We provide the following guidance for the conduct of such hearings.

13

C.

On remand, and pursuant to the terms of the Directive, the Law Division judge shall issue a notice scheduling a hearing with an accompanying statement of reasons for its intent to deny the application. Administrative Directive #06-19 at 3. "[T]he hearing must be held no later than [thirty] days after receipt of the permit to carry application, and the court shall make a determination within [fourteen] days thereafter, absent extraordinary circumstances." Ibid.

At the hearing, the applicant should be afforded the opportunity to proffer reasons why he satisfies the standard and respond to any questions from the judge. Amendments to the application as well as other evidence not included in the application may be admitted at the judge's discretion, such as evidence pertinent to credibility or key factual issues. If the applicant conducted informal discussions regarding his application with the police chief or superintendent, the content of those discussions may be presented to the judge as may any written conclusions by the reviewing chief or superintendent. The applicant may request to call the chief or superintendent, at the judge's discretion, if the applicant demonstrates a basis for the testimony. Testimony by individuals such as the applicant and his or her employer may be taken at the hearing at the judge's discretion.

14

IV.

We remand this matter to the Law Division for a hearing pursuant to the

Directive and in accordance with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion.

15