**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5414-18T2

IN THE MATTER OF THE
APPLICATON OF CARRY
PERMIT FOR REB RUSSEL, II

_____

Argued telephonically May 19, 2020 –
Decided June 25, 2020

Before Judges Fisher and Accurso.

On appeal from the Superior Court of New Jersey,
Law Division, Hunterdon County, Docket No. GP-
HNT-19-001.

Jef Henninger argued the cause for appellant Reb
Russell, II.

Jeffrey L. Weinstein, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued the
cause for respondent State of New Jersey (Michael
J. Williams, Acting Hunterdon County Prosecutor,
attorney; Jeffrey L. Weinstein, on the brief).

PER CURIAM

Reb Russell, II appeals from the trial court's July 25, 2019 order denying

his application for a carry-permit, finding he failed to establish justifiable need

to carry a handgun in New Jersey.  See N.J.S.A. 2C:58-4.  Russell contends the court erred in that finding, that it failed to consider "all the appropriate facts" he presented, should have accorded more deference to the Superintendent of State Police, that Russell's failure to have retained counsel to represent him at the hearing conducted by the court hindered "his ability to properly articulate his argument," and that a remand is required in light of the Supreme Court's recent opinion in In re Carlstrom, 240 N.J. 563, 565 (2020), holding a hearing must be held whenever the Law Division "contemplates denying a handgun carry-permit that has been approved by the police chief or superintendent." We find no merit in any of Russell's arguments and affirm, substantially for the reasons provided in Judge Borkowski's comprehensive opinion entered after a hearing.

Russell holds a Ph.D. in the sciences and works in the pharmaceutical industry.  After his twenty-three-year marriage ended in divorce in 2018, he started a side business as a firearms instructor.  When he applied to State Police for a carry-permit, he resided in Doylestown, Pennsylvania, the same town in which his ex-wife resides.  Russell has held a concealed-carry permit in Pennsylvania for twenty years.

Lieutenant Stephen Mazzagatti, acting on behalf of the Superintendent, approved the application on June 4, 2019. The approval noted that Russell "successfully completed a handgun qualification course, with a Glock 19, . . . under the direction of Instructor Reb Russell, II." The approval also noted that Russell's application was endorsed by three individuals all of whom indicated they had known him for more than three years and could attest to his reputable character and behavior. See N.J.A.C. 13:54-2.4. The approval stated that no information suggested Russell was subject to any disability included in N.J.S.A. 2C:58-3(c), but did not address his justifiable need to carry a handgun, N.J.S.A. 2C:58-4(c). It did, however, state that in the event Russell's application was approved, "the restrictions should be that the applicant can only carry a weapon in the performance of his duties during working hours," and that it would be "null and void" if that employment terminated.

Following approval by the State Police, Russell submitted his application to the Superior Court on June 17, 2019, see N.J.S.A. 2C:58-4(d), which was opposed by the Hunterdon County Prosecutor. In support of the application, Russell submitted a two-page single-spaced letter detailing his background, education and work history. The bulk of the letter was devoted to addressing his need for the permit.

Russell explained that he'd been the "victim of domestic abuse" for the entire length of his twenty-three-year marriage, although he "never reported anything due to the social stigma." He claimed his ex-wife wife suffered from borderline personality disorder and refused treatment. Russell stated she had threatened him, saying "there is a special place in hell for [him] and she will personal[ly] ensure [he] get there quickly and if [she] can't have [him] no one will." He claimed he took her threats seriously, knowing "what she is capable of from experience," especially as he had "move[d] on in a committed relationship," which had "further enraged" her.

Russell explained both his parents and the woman he was seeing lived in New Jersey and that he spent several days a week at the latter's home. He contended his ex-wife was "someone who scares [him] with her rage, impulsive behaviors, lies, manipulation and abuse." He noted he had "the legal means" to protect his person in Pennsylvania where he had "some sense of safety and peace" and was requesting the same in New Jersey. Russell asserted he "shouldn't have to live in fear and should be free from the real and constant threat [his] ex-wife is to [him]." He closed by saying "[t]he potential for danger is real" and the bias and shame that had prevented him from previously coming forward "are not."

4

The court conducted a hearing on the application on July 24, 2019. Judge Borkowski began the hearing by explaining the carry-permit statute assigned the decision of whether the permit should issue to the court, notwithstanding input from the State Police "as to whether or not a carry permit should be permitted and whether or not the there is a justifiable reason for that," which is why the court was conducting a hearing. The prosecutor was permitted to question Russell and began by asking whether they could talk about the letter Russell submitted to the court as to why he "should have a carry permit" in New Jersey. Russell responded "that it's tough, but [he] realize[d] [he] ha[d] to."

Russell explained his primary reason for seeking the permit was his "abusive ex-wife." He testified that he stayed in his marriage "for the kids," although his wife was verbally abusive and "became physically abusive." He explained that because he was "bigger than she is" he "didn't think about it much from that perspective" and explained it also was "an embarrassment." He testified she would be happy at times and "would apologize, . . . but they make you think — she made me think it was my fault at times until finally it was enough." He claimed his ex-wife is "a good person," but "still really weaponizes the kids" and, as he "understand[s] it from working with people,

she has an emotional dysregulation issue where she can just fly into rages."
He explained that he'd had a carry-permit in Pennsylvania since 1999, and
although he'd worked in New Jersey for over a decade, it was only recently
when he began spending more time at his girlfriend's, seeing what his ex-wife
was "capable of, and understanding what's really going on" that he sought a
carry-permit here.

In response to the prosecutor's questions as to whether Russell's ex-wife
had ever followed him into New Jersey or caused alarm to him here, Russell
responded that he "can't say [he'd] noticed that she's followed [him], but [he]
can't say that she hasn't." He expressed the belief "that probably most of the
time as [he understood] this disorder she's stable but when she runs into rages
and becomes impulsive . . . I mean the risk is probably small, but it's 100
percent lethal if it happens." Asked by the prosecutor whether he felt local law
enforcement in New Jersey would be able to protect him were his ex-wife to
appear in New Jersey, although he had not seen her here, Russell responded
that he didn't feel they could "in most cases" because "there's a response time,
right, to everything."

The judge also engaged Russell at length. She noted he had certified
himself as to his proficiency with a handgun and asked how the prosecutor

might confirm his ability to safely handle a firearm in that circumstance. When Russell explained he could certify himself because the National Rifle Association had certified him as an instructor, the judge noted he had not submitted those documents to the court. Russell had a photo of his certification on his phone, which the court reviewed and read into the record.

Turning to justifiable need, the judge asked whether Russell had ever sought a restraining order against his ex-wife or the assistance of the police. When Russell said he had done neither, instead choosing to stay away from her and mentioned she had their children call him because he wouldn't speak to her, the court inquired as to whether his ex-wife had been awarded custody of their children. Russell explained they had joint custody, which he had not opposed. When the judge asked whether he felt comfortable with the children being in his ex-wife's custody given what he had testified to about her, he replied that he did not feel comfortable. He noted, however, that the children were "older now" and he had been advised by counsel there was little to do in such cases, "I don't have the evidence, ma'am."

When the judge asked whether his ex-wife had ever attacked him, Russell responded that she had not attacked him since they separated over two years before, but that she knew in Pennsylvania "that would be a bad thing —

A-5414-18T2

but she also knows in New Jersey, you know, based on my history that I wouldn't have the same capabilities." Asked what he meant, Russell responded that his ex-wife knew he "had a concealed carry in Pennsylvania, but [he'd] never had one in New Jersey."

When the judge pointed out that Russell could seek a restraining order that would protect him if threatened by his ex-wife, he responded saying, "yeah, you can put that in place I'm assuming, but that doesn't stop people." In response to the court's question as to the last time his ex-wife had threatened him, Russell responded that "it's probably about a year ago." When he expressed that he just did not "feel comfortable with her, ma'am, especially given [her] condition," the judge noted his ex-wife would be held in contempt if she violated the restraining order and asked whether that wouldn't "be a different way to deal with it rather than obtaining a carry permit." Russell replied that the judge's question "assumes that that wouldn't be a terminal effect at that point . . . I mean you can violate a restraining order . . . and it's fine if the outcome isn't extreme." Russell admitted, however, that his wife had never approached him with a weapon, and he did not know whether she possessed one.

A-5414-18T2

Asked by the court whether he was asserting justifiable need on any ground other than personal protection, Russell replied it would be easier with his firearm instruction business. If he had a carry-permit he would not be limited to transporting a gun to a firing range from his home, but could carry the weapon to work, for example, and meet a student at the range after work, without having to return home first to retrieve his weapon. He testified, however, that while it would make things easier for him, that was not why he was seeking the permit. The court also inquired as to the recommendation by State Police that the permit be restricted so as to only allow Russell to carry a handgun "in the performance of his duties during working hours," when his application reflected he only traveled to New Jersey to visit his parents or his girlfriend and not for work. The prosecutor offered that the restriction was not specific to Russell but something he believed the State Police "put . . . in every application."

Judge Borkowski issued a written opinion denying the application the day after the hearing. In a comprehensive opinion discussing the law governing the issuance of carry-permits and making clear factual findings based on Russell's application and the evidence and arguments adduced at the hearing, the judge found Russell was a person of good character and not

subject to any of the disabilities in N.J.S.A. 2C:58-3(c).  And although noting that "common sense dictates that applicants should not certify themselves" as to their familiarity with the safe handling and use of handguns required by N.J.S.A. 2C:58-4(d) and N.J.A.C. 13:54-2.4(b), the court found Russell's testimony as to his qualifications credible and the documentation he submitted at the hearing authentic.  The court accordingly found Russell was also "thoroughly familiar with the safe handling and use of handguns," satisfying the requirements of N.J.S.A. 2C:58-4(d).

Although noting that Russell's application had been approved by the Division of State Police, thus implying a required finding of justifiable need pursuant to N.J.S.A. 2C:58-4(c), Judge Borkowski found an "express determination of justifiable need" was "noticeably absent" from the Division's investigation report and approval.  Based on her own review of Russell's application and his testimony at the hearing, Judge Borkowski concluded Russell had "not provided the specific detail necessary to conclude that there is an urgent necessity" for self-protection as required by statute, and that Russell's "generalized fear" of his ex-wife could not support issuance of a carry-permit under In re Preis, 118 N.J. 564, 571 (1990).

Specifically, the court noted Russell provided only a few generalized verbal threats from his ex-wife, the most recent occurring a year ago. He could not say that she had followed him since their divorce or ever threatened him with a weapon. Indeed, he was not aware of whether she even possessed one. And although he contends his ex-wife suffers from bi-polar disorder, he offered no documentation of that or any certification or testimony from a qualified and unbiased third-party to substantiate she suffers from that illness or legitimize the fear Russell expressed. The judge noted defendant's testimony that he had never sought the assistance of the police or attempted to obtain a restraining order against his ex-wife, or taken other reasonable means of protecting himself before seeking a carry permit.

The court concluded Russell's

> own actions contradict his fear of his wife. Although recognizing a victim of domestic violence may hesitate to report abuse because of the stigma attached, prior to resorting to carrying a weapon for protection, the applicant never reported any past or, more pertinent to this action, any present abusive conduct, has never requested a temporary or final restraining order, has chosen to reside and operate his business in the same town where his ex-wife lives although he testified that he rarely spends time there, did not contest his ex-wife having joint custody of his children. Moreover, the applicant characterized his ex-wife's disorder and behavior as being stable most of the time. He also testified that he was advised

11

> when she throws rages and acts on impulses it can
> result in lethal consequences, however he asserted that
> the "risk [of lethal consequences] is probably small."
> The last verbal threat was approximately one year ago.
> The code requires the applicant to demonstrate a
> "special danger to the applicant's life that cannot be
> avoided by reasonable means other than by issuance of
> a permit to carry a handgun." The applicant has not
> satisfied that burden. Therefore, the court does not
> find the applicant's described fear of his ex-wife
> provides a justifiable need to carry a firearm in this
> state as he has not demonstrated an urgent threat
> exists.

As to Russell's side business as a firearms instructor, the court found no evidence to support his need for a carry-permit in connection with that endeavor. The judge noted Russell did not need a carry-permit to lawfully transport a firearm from his residence in either Pennsylvania or New Jersey directly to any range in New Jersey. Although Russell testified he maintained an office in Ewing, that office was for Russell's pharmaceutical work, not his firearms instruction. Based on Russell's testimony, the judge concluded it would be convenient for Russell to travel directly from work to the range, but his convenience could not support a justifiable need for a carry-permit in connection with his self-employment as a firearms instructor.

The court summarized her denial of Russell's application as follows:

> The court denies the applicant's request for a
> permit to carry because of a lack of specific detail

provided in his application and testimony of justifiable need, the generalized nature of the threats, the lack of immediacy or urgency of any threats, and the lack of supporting documents. Although the applicant has demonstrated that he is of good character, suffers from no impediments to owning or carrying a firearm and is knowledgeable about the safe and proper use of a firearm, the court finds that he has not shown he has a justifiable need to carry a firearm. In essence the applicant failed to establish that he will be subjected to a substantial threat of serious bodily harm and carrying a handgun is necessary to reduce the threat of unjustifiable serious bodily injury.

"The permit to carry a gun is the most closely-regulated aspect" of the "careful grid" of New Jersey's gun-control laws. Preis, 118 N.J. 564, 568 (quoting State v. Ingram, 98 N.J. 489, 495 n. 1 (1985)). Under the rule established by our Supreme Court in Siccardi v. State, 59 N.J. 545, 557 (1971), and reaffirmed in Preis, an applicant must "establish an urgent necessity for carrying guns for self-protection" under the statute. "The requirement is of specific threats or previous attacks demonstrating a special danger to the applicant's life that cannot be avoided by other means." Preis, 118 N.J. at 571. The law is well settled that "[g]eneralized fears for personal safety are inadequate" to establish the need for a carry-permit in this State. Ibid.; In re Wheeler, 433 N.J. Super. 560, 614 (App. Div. 2013). In reviewing a trial court's decision to grant or deny the permit, we are bound to accept those

factual findings with substantial credible support in the record.  In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997).  Our review of the trial court's legal conclusions, of course, is plenary.  Id. at 117.

Applying those standards here, we find no basis to question Judge Borkowski's conclusion that Russell failed to establish justifiable need for a carry-permit.  She was obviously correct that no deference was due Lieutenant Mazzagatti's approval of the application on behalf of the superintendent in the absence of any express finding by the lieutenant that Russell had established justifiable need in accordance with N.J.S.A. 2C:48-4(c) and N.J.A.C. 13:54-2.4(d)(1).  Moreover, the statute regulating issuance of a carry-permit makes clear that although the superintendent may approve an application, only a Superior Court judge may issue the permit, making the judge's exercise of her independent judgment critical.  See In re Pantano, 429 N.J. Super. 478, 485-86 (App. Div. 2013).

Contrary to Russell's arguments on appeal, a review of the hearing transcript and Judge Borkowski's careful findings makes clear the judge considered all the facts he put forth in support of his application.  Although we cannot say whether Russell's choice to not retain counsel "hindered his ability to properly articulate his argument," counsel has not suggested what that

argument might be in light of the facts Russell presented in support of his application.

Finally, we reject the argument that the Court's recent decision in Carlstrom requires a remand here. Russell was afforded a prompt hearing on his application for a carry-permit. See Carlstrom, 240 N.J. at 572. And, as his response to the prosecutor's initial questions at that hearing makes clear, he knew and was prepared to address the critical issue of whether the condition and behavior of his ex-wife was sufficient to establish his need for a carry-permit in New Jersey. See ibid. Judge Borkowski afforded him the opportunity to present his reasons as to why he satisfied the statutory standard, and he responded to her questions at length. Ibid. Further, Judge Borkowski permitted Russell to submit pertinent documents stored on his phone in the course of the hearing, which she relied on in finding he satisfied the requirements of N.J.S.A. 2C:58-4(d). See Carlstrom, 240 N.J. at 572-73. Finally, she sent Russell a detailed statement of reasons for her denial of the permit the day after the hearing. See id. at 572. Russell was provided the full and fair hearing contemplated by the Court in Carlstrom as required by Administrative Directive #06-19. Nothing more was required.

Because Judge Borkowski's conclusion that Russell did not establish justifiable need for a carry-permit is in accord with well-settled law, and Russell has provided us no basis to reverse that conclusion, we affirm, substantially for the reasons expressed by Judge Borkowski in her thorough and thoughtful statement of reasons of July 25, 2019.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION