**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3524-19

IN THE MATTER OF
THE APPLICATION OF
RICHARD ANDREW MILLER
FOR A PERMIT TO CARRY
A HANDGUN

_____

Submitted March 10, 2021 – Decided May 7, 2021

Before Judges Sumners and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. GPA-10-2020.

Castano Quigley, LLC, attorneys for appellant (Gregory J. Castano, Jr., on the briefs).

Francis A. Koch, Sussex County Prosecutor, attorney for respondent (Shaina Brenner, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Richard Andrew Miller appeals the Law Division's order following an

evidentiary hearing denying his application for a limited-type permit to carry a

handgun when working security at religious services at his synagogue. Having considered the arguments and applicable law, we affirm.

## I

Miller is a ten-year member of a Chabad synagogue, Congregation Levi Yitzchok (Congregation), located in Morristown, and volunteers on the Congregation's security team during its religious services. On or about June 13, 2019, he filed an application with the New Jersey State Police to obtain a concealed carry permit.

In accordance with N.J.S.A. 2C:58-4(c), the application had to be

> accompanied by a written certification of justifiable need to carry a handgun, which shall be under oath and, in the case of a private citizen, shall specify in detail the urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun.

To comply, Miller's application referenced deadly and violent acts directed at Jewish congregations in Pittsburgh, Boston, and Poway, CA, and stated that the Congregation wanted him to legally carry a handgun "to protect the [worshippers] of our synagogue while prayer services are under way."

The State Police approved Miller's application; thus, the trial court had to determine if Miller had a "justifiable need" for a permit. N.J.S.A. 2C:58-4(d).

2

> The court shall issue the permit to the applicant if, but only if, it is satisfied that the applicant is a person of good character who is not subject to any of the disabilities set forth in subsection c. of N.J.S.A. 2C:58-3, that he is thoroughly familiar with the safe handling and use of handguns, and that he has a justifiable need to carry a handgun in accordance with the provisions of [N.J.S.A. 2C:58-4(c)]. The court may at its discretion issue a limited-type permit which would restrict the applicant as to the types of handguns he may carry and where and for what purposes the handguns may be carried.
>
> [N.J.S.A. 2C:58-4(d).]

At the February 19 evidentiary hearing, Miller declined the opportunity to obtain counsel afforded by the court and decided to represent himself. In addition to the deadly attacks on synagogues noted in his application, Miller testified that anti-Semitic attacks in Brooklyn, Jersey City, Houston, and Monsey, NY justified his need for a limited-type permit to provide his security to the Congregation. According to Miller, the Congregation could not afford to hire armed guards, and local police protection was limited to the occasional parking of an empty patrol car at the synagogue. Upon the court's inquiry, Miller stated that during the ten years he has been a member of the Congregation, there have not been any threats of physical harm against the synagogue or its worshippers. There were, however, regular occurrences of Jewish people walking in the area being berated with the word, "Jew." Miller acknowledged

there were no synagogue members threatened "through social media or any other [similar] form of communication."

Miller also recounted two personal threats occurring at his home in Sussex County. One time, an angry neighbor came onto his property but left after being told to do so. Another time, he received phone calls from blocked numbers stating, "We're coming for you too."

In conclusion, Miller testified he wanted a carry permit due to the "very large increase in the number of anti-Semitic actions taken to Jewish people in the [recent two] years" and that he did not "feel like being a guinea pig" while he is praying.

At the conclusion of the hearing, the court denied the application. In its oral decision, the court initially noted that Miller's application was considered based on the current law, not on the pending legislation he cited in an effort to demonstrate there was a change in public sentiment towards guns. The court determined "the [s]tandard of [j]ustifiable [n]eed [under N.J.S.A. 2C:58-4(d)] is strict[;]" thus, there must be "specific threats . . . or previous attacks demonstrating a special danger to the applicant's life that cannot be avoided by other means" to be granted a limited-type permit. Recognizing Miller's application was based on the Congregation's request to have a security team

4

member "possess a firearm while the religious services are taking place for security[,]" the court held that in considering the application, there was no "history of specific threats to this particular [s]ynagogue." The court expressed concern regarding the numerous recent anti-Semitic tragic attacks but ruled that because they did not occur at the Congregation or involve its worshippers, they did not substantiate Miller's justifiable need.

## II

In this appeal, Miller contends that because his application "is specifically limited to a particular time and place and its purpose is to protect religious worshippers from potential harm while they peaceably assemble, it qualifies for approval" under N.J.S.A. 2C:58-4(d). He argues that "the ancient interpretation of 'justifiable need' [articulated in Siccardi v. State, 59 N.J. 545, 557 (1971)] must be re-examined and expanded to conf[o]rm to the realities of life in the 21st century." To support his argument, he again points to pending legislation Assembly Bill No. 1255, which would allow a place of worship to have "one person . . . carry [a] handgun during religious services" for security purposes.

"The permit to carry a gun is the most closely-regulated aspect" of the "careful grid" of New Jersey's gun-control laws. In re Preis, 118 N.J. 564, 568 (1990) (quoting State v. Ingram, 98 N.J. 489, 495 n.1, (1985)). Under the rule

5

established by our Supreme Court in Siccardi, 59 N.J. at 557, and reaffirmed in Preis, 118 N.J. at 571, an applicant must "establish an urgent necessity for carrying guns for self-protection" under the statute. "The requirement is of specific threats or previous attacks demonstrating a special danger to the applicant's life that cannot be avoided by other means." Preis, 118 N.J. at 571 (citations omitted). The law is well settled that "[g]eneralized fears for personal safety are inadequate[]" to establish the need for a carry-permit in this State. Ibid.; see also In re Wheeler, 433 N.J. Super. 560, 614 (App. Div. 2013). The applicant must show an objective need for the defensive use of a handgun to obtain a carry permit. Wheeler, 433 N.J. Super. at 614. The court must consider justifiable need on a case-by-case basis. Id. at 579. The justifiable need requirement of N.J.S.A. 2C:58-4(d) has been found constitutional by the federal court in Drake v. Filko, 724 F.3d 426, 439 (3d Cir. 2013), and by this court in Wheeler, 433 N.J. Super. at 615-16.

A trial court's findings regarding the denial of an application to carry a handgun in public are binding on appeal when supported by adequate, substantial, credible evidence. In re Application of Borinsky, 363 N.J. Super. 10, 23 (App. Div. 2003). Our review of the trial court's legal conclusions, of course, is plenary. In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997).

However, we are not bound by the court's evaluation of whether an applicant met the "justifiable need to carry a handgun" standard of N.J.S.A. 2C:58-4, which we review de novo. Borinsky, 363 N.J. Super. at 23-24.

Considering these standards, we find no basis to question the trial court's conclusion that Miller failed to establish justifiable need for a limited-type permit. Miller's reliance upon anti-Semitic attacks in other communities to justify his application is insufficient. He failed to show that there were specific threats indicating a special danger to the Congregation's worshippers during their services. We place no significance on his reference to pending legislation that may in the future allow him to receive a gun permit to provide security. Based upon the current law, Miller's application was properly denied.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3524-19